MARY E. THOMPSON ET AL. v. GALVESTON, HARRISBURG & SAN ANTONIO RAILWAY COMPANY.

Decided December 18, 1907.

**1.—Railroads—Derailment—Issue of Fact—Charge.**

The mother, wife and children of a locomotive engineer sued a railroad company for the death of the engineer caused by the derailment of his locomotive; the plaintiffs charged negligence in the failure to properly inspect the track; the defendant alleged that the derailment was caused by trespassers tampering with the track; the court charged the jury, in substance, that if they believed that the derailment was caused by trespassers drawing the spikes that held the rails in place, etc., to render a verdict for the defendant. Held that the charge took from the jury the issue of negligence on the part of the company in the proper inspection of its track, and was therefore reversible error. It is the duty of railroads to use ordinary care to guard against the acts of trespassers as well as other agencies affecting its track.

**2.—Charge—Positive Error—Practice.**

Where the charge of the court contains positive error, the party against whom the error is committed is not required to ask a special charge curing the vice.

**3.—Railroads—Derailment—Pleading.**

In a suit against a railroad company for the death of an engineer, pleading considered, and held sufficient to raise the issue of negligence on the part of the defendant in the failure to properly inspect the track, although the rails may have been intentionally displaced by evil-minded persons not connected with the defendant.

**4.—Ordinary Care—Dependent on Circumstances.**

Ordinary care will require the exercise of a very high degree of diligence under certain facts and circumstances, and what might be ordinary care under one set of circumstances might be culpable negligence under another combination of circumstances. The care to be exercised is proportionate to and measured by the necessities and exigencies of the time, place, occupation and situation. Facts considered and held to illustrate the rule.

**5.—Charge—Abstract Propositions.**

The court in its charge should give to the jury the law applicable to the facts in evidence. The giving of abstract propositions of law is not to be commended, and at times may be positive error.

**6.—Issue—Irrelevant Testimony.**

There being no issue as to the competency or incompetency of an employee,

the opinion of a witness on that subject was, at least, irrelevant and properly excluded.

### 7.—Derailment—Condition of Track—Testimony.

In a suit for damages caused by a wreck alleged to have been caused by a dangerous condition of the track, a witness not an expert may testify as to the curvature of the track, the condition of the rails, spikes, ties, etc., but should not be allowed to testify that in his opinion the track was dangerous.

### 8.—Evidence—Photographs.

To render photographs of a locality admissible in evidence it is only necessary that any witness who knows the fact should testify that it truly represents the scene.

### 9.—Appeal—Practice.

An appellate court will not go outside the record to consider and decide questions which might possibly arise on another trial of the case.

Appeal from the District Court of Bexar County. Tried below before Hon. A. W. Seeligson.

*Perry J. Lewis* and *H. C. Carter,* for appellants.—Even if trespassers did create the defect, the evidence in the case authorized the jury to find that the defendant had not exercised proper care in discovering the defect, and it was, therefore, clearly erroneous for the court to direct a verdict for the defendant upon a finding that trespassers interfered with the track and caused the wreck, regardless of whether or not the defendant had exercised proper care to discover the defect. Houston & T. C. Ry. v. Gaither, 43 S. W. Rep., 266; International & G. N. Ry. v. Johnson, 55 S. W. Rep., 772; Texas Mexican Ry. v. Mendez, 78 S. W. Rep., 27; Marcom v. Raleigh & Airline Ry., 35 S. E. Rep., 423; Hardin v. Ft. Worth & D. C. Ry., 18 Texas Ct. Rep., 272; San Antonio Traction v. Kumpf, 18 Texas Ct. Rep., 423; Texas Cent. Ry. v. Waldie, 18 Texas Ct. Rep., 60; 1 Labatt, Mas. & Ser., pp. 279-282, 338-39.

The special charge, given at the request of the defendant, instructed the jury that the defendant was not bound to supply its employes with "a perfectly safe track;" this was an incorrect statement of the law, was upon the weight of evidence, misleading and prejudicial to the plaintiffs. Gulf, C. & S. F. Ry. v. Smith, 87 Texas, 348; International & G. N. Ry. v. Johnson, 55 S. W. Rep., 772; Railway v. Patton, 82 Fed. Rep., 983; Galveston City Ry. v. Hewitt, 67 Texas, 478; Meadow v. Truesdell, 56 S. W. Rep., 932; Gulf, C. & S. F. Ry. v. Hodges, 76 Texas, 93; Houston & T. C. Ry. v. Boozer, 70 Texas, 530; Galveston, H. & S. A. Ry. v. Gormley, 91 Texas, 393; Citizens Tel. Co. v. Thomas, 17 Texas Ct. Rep., 532; 1 Labatt, Mas. & Ser., p. 172, note 7; St. Louis S. W. Ry. v. Ball, 66 S. W. Rep., 879; Meadows v. Truesdell, 56 S. W. Rep., 932; Hays v. Gainesville St. Ry., 70 Texas, 608; Gulf, C. & S. F. Ry. v. Harriett, 80 Texas, 81; Lumsden v. Chicago & R. I. Ry., 67 S. W. Rep., 168; Southern Kansas Railway Co. v. Sage, 98 Texas, 438.

The court erred in refusing to allow the witness, Shackelford, to testify "that at the time Calk was placed in charge of the section

that includes Baxter's Curve, that the witness then informed defendant's roadmaster, Ellison, that Calk did not have experience enough to keep up Baxter's Curve." Galveston, H. & S. A. Ry. Co. v. Parrish, 43 S. W. Rep., 536; Missouri P. Ry. Co. v. Christman, 65 Texas, 369; Ft. Worth & D. C. Ry. Co. v. Wilson, 3 Texas Civ. App., 585.

The court erred in striking out the testimony of the witness Reyes to the effect that Baxter's Curve, where the wreck occurred, "was a very dangerous curve." San Antonio & A. P. Ry. Co. v. Parr, 26 S. W. Rep., 861; San Antonio & A. P. Ry. Co. v. Brooking, 51 S. W. Rep., 537; Ft. Worth & D. C. Ry. Co. v. Wilson, 3 Texas Civ. App., 585; Alabama M. Ry. v. Jones, 21 So. Rep., 507.

The photographs were admissible because they showed the track, curve and its location and the situation of the mail car and the engine down in the canyon, and illustrated the curve with a passenger train rounding it, and it was error to exclude them. Archar v. N. Y., N. H. & H. Ry., 13 N. E. Rep., 318; Southern Pacific Co. v. Huntsman, 118 Fed. Rep., 412; Taylor B. & H. Ry. Co. v. Warner, 88 Texas, 647; Wimber v. Iowa Cent. Ry., 87 N. W. Rep., 505.

*Baker, Botts, Parker & Garwood, Newton & Ward* and *Teagarden & Teagarden*, for appellee.—If it be true that the charge and the special charges are, upon the whole, susceptible of the construction insisted upon, and the pleadings raise that issue, still it was not erroneous, in that there was not time after the track was tampered with for the defendant, by the exercise of ordinary care, to have discovered the crime and prevented the wreck, as appellants contend, and there was, in fact, no negligence in this respect, as matter of law. Galveston, H. & S. A. Ry. v. Faber, 77 Texas, 153; Joske v. Irvine, 91 Texas, 583; International & G. N. Ry. v. Hall, 12 Texas Civ. App., 17; Houston & T. C. Ry. v. Gilmore, 62 Texas, 391; Galveston, H. & S. A. Ry. v. Delahunty, 53 Texas, 207; Turner v. Ft. Worth & D. C. Ry., 30 S. W. Rep., 253; Missouri Pac. Ry. v. Platzer, 73 Texas, 124; Denham v. Trinity County Lumber Co., 73 Texas, 82.

The acts of the wreckers could not have been anticipated, and a failure to use extra precautions to discover this was not negligence. Deyo v. New York Cent. Ry. Co., 34 N. Y., 9; Fredricks v. Northern Cent. Ry., 157 Pa., 103; 22 L. R. A., 306; East Tennessee, V. & G. Ry. v. Kane (Ga. Sup. Ct., 1893), 22 L. R. A., 315.

Where specific acts of negligence are relied upon, the charge must be confined to them. Special attention is invited to the case of Rost v. Ry., 76 Texas, 173; Sanches v. S. A. & A. P. Ry., 88 Texas, 119; International & G. N. Ry. v. Eason, 35 S. W. Rep., 209.

Plaintiff made no request that the court submit to the jury the issue as to whether or not defendant was negligent in failing to discover the act of the wreckers after this was done, if in fact they did it. Gulf, C. & S. F. Ry. v. Hill, 95 Texas, 629; Sabine & East Texas Ry. v. Wood, 69 Texas, 679; Texas & Pac. Ry. v. Brown, 78 Texas, 402.

The court did not commit error in giving defendant's special charge, and this is demonstrated to a mathematical certainty by the verdict of the jury, and is settled by the undisputed facts. This was not error, because:

(1) Under the charge and the facts the jury necessarily found that the wreck was due to the acts of trespassers:

(2) The undisputed facts show that the rules required the speed of trains reduced to twelve miles an hour in passing that curve;

(3) The undisputed proof shows that this rule was complied with by deceased, and appellants so contended in their pleadings; and they made proof of it without doubt. In fact, every witness, on both sides, testified that the train was moved slowly and cautiously, and that the speed could not have exceeded the limit fixed by the rule. The jury could, therefore, not have been misled by this charge, if we were to concede that the charge was not proper, which we do not do. It was the duty of deceased to observe this rule governing the speed of the train, and on this point the charge was correct. Gulf, W. T. & Pac. Ry. v. Ryan, 69 Texas, 665, and cases cited; San Antonio & A. P. Ry. v. Wallace, 76 Texas, 638; Pilkinton v. Gulf, C. & S. F. Ry., 70 Texas, 226; 1 Labatt's M. & S., 365, 365a, 367, and 952 to 955.

If this charge was erroneous it could not possibly have misled the jury. Such a verdict was the necessary result. Bowles v. Brice, 66 Texas, 731; Browning v. Pumphrey, 81 Texas, 168; Texas & Pac. Ry. v. Magrill, 15 Texas Civ. App., 357; Galveston v. Morton, 58 Texas, 415; International & G. N. Ry. v. Hawes, 54 S. W. Rep., 326.

FLY, ASSOCIATE JUSTICE.—This appeal results from a verdict and judgment for appellee, in a suit instituted by appellants, the mother, wife and children of Charles E. Thompson, to recover damages resulting from his death, by the derailment of a locomotive on which he was the engineer, in the service of appellee.

It was alleged in the petition, among other things, that the derailment occurred at a dangerous curve known as "Baxter's Curve;" that the curve was sharp and abrupt; that it was compound and reverse, which rendered it extremely dangerous for trains; that the tract was not properly aligned and had spread; that the rails were too small for the heavy trains and locomotives that ran around the curve, and the rails and spikes were old, defective and rotten and that no guard rails had been provided. In addition, it was alleged: "That the track, where the derailment took place, was known to the defendant to be in a defective and dangerous condition, as aforesaid, · many wrecks having heretofore occurred at this same point, and, notwithstanding it knew, or by the exercise of ordinary care could have known this, the defendant negligently failed to provide for a proper inspection and repair of said curve, track and road bed, but negligently permitted the same to be and remain in the condition aforesaid, in violation of its duty. That by reason of the dangerous conditions which existed at said curve, as aforesaid, it was the defendant's duty to provide track walkers and a

sufficient number of competent employes to watch and repair the track, curve and road bed at the point where said wreck took place, but, notwithstanding such duty, the defendant negligently failed to provide track walkers for the track in question and further negligently failed to provide a sufficient number of competent men to watch and repair the track, curve and road bed, but, on the contrary, the number of which defendant furnished for the purpose of watching and repairing said track were grossly inadequate for the discovery of defects and danger in said track, and the men that were furnished by the defendant were inexperienced in such work and wholly incompetent."

The first assignment of error assails the action of the court in its refusal to grant the motion for new trial because the undisputed evidence showed that the death of Charles E. Thompson was caused by appellee's negligence. Without discussing the facts, which would be manifestly improper in view of the reversal of the judgment which herein follows, except insofar as it may be necessary to elucidate other assignments, we deem it sufficient to say that the "undisputed evidence," as claimed by appellants, did not show the negligence of appellee, but every material point was sharply contested and the case was peculiarly one to be determined by a jury.

It was not denied that Charles E. Thompson, while operating an engine as the employe of appellee, was killed at "Baxter's Curve," near Del Rio, Texas, by the derailment of his engine, and that the derailment occurred by the displacement of a rail on said curve, the contention of appellants being that the rail was displaced and the derailment caused through the negligence of appellee, the contention of appellee being that the rail was not displaced through its negligence, but was caused by trespassers who maliciously "released the spikes and plates at a joint of the rails and moved a rail so that it would and did derail and cause the accident." In connection with its contention appellee introduced circumstances pointing to the conclusion that wreckers displaced the rail, and to meet the allegations of negligence as to inspection of its roadbed and the keeping of competent track walkers and watchmen at the dangerous curve where the derailment occurred, introduced evidence that a train had passed over the curve at 1 o'clock p. m,; that a section gang had passed over it at about 5 o'clock p. m., and the accident occurred at 8 o'clock p. m. Under this state of case, the following charge was given by the court, which is made the subject of attack in the second assignment of error: "If you believe from the evidence that some trespassers released the spikes and plates at a joint of the rails and moved the rails so that it would and did derail the engine of which Charles E. Thompson was engineer, then in this event you must return a verdict for the defendant."

The effect of that instruction was to withdraw the charge of improper inspection and failure to have competent track walkers from the jury, which can not be justified unless the trial court was authorized to hold that the passing of a train over the track safely at 1 o'clock and of a hand car at 5 o'clock, as a matter of law, constituted a complete answer to and refutation of the allegations

as to inspection, and that such acts removed the issue as to proper inspection from the jury.

In 1853 a statute was passed in this State, which has never been altered or amended, in which the requisites of a judge's charge to the jury are set out, one of which was, and is, that "he shall decide on and instruct the jury as to the law arising on the facts, and shall submit all controverted questions of fact solely to the decision of the jury," and that statute has at all times, since its passage, and especially since the rendition of the opinion in Texas & Pac. Ry. v. Murphy, 46 Texas, 356, been held "mandatory and peremptory." It is true that when there is no contradictory evidence or when it is so clearly defective as to not raise an issue of fact, the judge would be justified in withdrawing the matter from the jury. Such cases, however, under the Texas system, are rare and such action should not be taken without the most thorough and earnest scrutiny of all the facts, and just as long as the element of uncertainty enters into the cause, the question should be submitted to that branch of the courts to whom the law has confided the exclusive right to weigh the evidence and pass upon the credibility of witnesses.

It is the general rule that the existence or not of negligence is a question of fact for the jury, and not one of law for the judge, and it is only in those cases where the law declares the doing or not doing of a certain thing negligence, that it is a matter of law to be so declared by the court. San Antonio & A. P. Ry. v. Long, 4 Texas Civ. App., 497; Galveston, H. & S. A. Ry. v. Briggs, 4 Texas Civ. App., 515; Campbell v. Trimble, 75 Texas, 270.

The curve, where Charles E. Thompson met his death, was shown by appellant's testimony to be a very dangerous one, that the rails were worn, that there were no rail braces, that tie plates were broken and that it was difficult to keep the track properly aligned at that point. There had been other accidents on the curve. When the rails became displaced was not shown. It may have occurred before the train went over the curve at 1 o'clock p. m., or it may have occurred between that hour and the time of the accident. There was testimony tending to support the theory that the damage to the joint on the track may have occurred before the train or hand car passed over it, and even if there had not been it could not be assumed by the court that the track must have been in good condition at one and five o'clock, and that trespassers had tampered with the track after five o'clock. If it be conceded that the track was properly inspected at 5 o'clock, which was a fact to be determined by the jury, still the court had no right to assume that it was all that was required in order to protect appellee from liability, if wreckers displaced the rail. How often inspections of a railroad track must be made depends upon its location, the surrounding country, the character of population and other circumstances, and in view of the diversified facts surrounding each case the sufficiency of such inspections is peculiarly a question of fact for a jury. This rule would not be changed by the fact that the defect in the track was caused by criminals, because the same duty to discover the de-

fect would prevail in that case as in case of defect from any other cause. The duty to exercise at least ordinary care in detecting the defect in the track devolved upon appellee regardless of what may have caused the defect, and the question of whether appellee exercised such care was one of fact for a jury.

We do not know when the displacement of the rail that derailed the engine took place, only that it occurred at some time prior to the death of Charles E. Thompson, and it was not for the trial judge to determine that the inspection and watch over the track was sufficient even though the time of the displacement had been shown, unless it had been such a short interval between the displacement and the accident as to preclude the idea that it could have been discovered by appellee. Even if the displacement of the rail took place after five o'clock, still it was a question of fact to be determined by the jury as to whether ordinary care had been exercised to discover the defect. In a similar case where only four or five hours had elapsed between the time when an obstruction was placed on the track, and the time of the accident, the Supreme Court of Illinois held that the question as to whether ordinary care had been exercised by the defendant was one of fact for a jury. Chicago & N. W. Ry. v. Delaney, 48 N. E. Rep., 476. In that case an instruction was asked by the defendant to the effect that if the employes had cleaned up the yard in which the obstruction was found on the day of the accident, and had left all the tracks free from obstructions, the plaintiff could not recover, and the court added "and that reasonable care did not require of defendant any further act of inspection down to the time plaintiff was injured." The Illinois court said: "This modification was proper, and no error was committed in making it. The court had, in numerous instructions asked by defendant, explained to the jury the relative duties of the company and of appellee, its employe, as fixed by law in the matters in controversy; and the instruction as asked would have been clearly improper, as it would have taken from the jury the question whether or not, under all of the evidence, the defendant was not guilty of negligence in not inspecting its track where it was obstructed after it was examined in the morning, and before the night crew entered upon its duties."

When it was proved that Charles E. Thompson was killed through a derailment of his engine, by reason of a defect in the track of appellee's railway, appellants had made out a *prima facie* case of negligence on the part of appellee, and the burden rested on it to show that the defect in the track had been caused by the unlawful acts of trespassers, and that it had not been negligent in failing to discover the same. Appellee, and not appellants, should have established the fact of such careful inspection as the place and circumstances demanded, and a failure to fix the time approximately when the trespassers did their work is chargeable to appellee and not appellants. The rule is thus stated in the case of Marcom v. Raleigh & Air Line Ry., 35 S. E. Rep., 423, by the Supreme Court of North Carolina, in a suit for damages accruing from the death of a fireman, which occurred through a derailment:

"It is the duty of every railroad company to provide and maintain a safe roadbed, and its negligent failure to do so is negligence *per se*. But. while the company is held to a very high degree of care there must in all cases be some element of negligence, to justify a recovery; and it can not be held responsible for the wanton and malicious act of an outsider, unless it could by the exercise of reasonable diligence have prevented the consequences of such· act. As the law places upon the company the positive duty of providing a safe track, including the incidental duties of inspection and repair, its unsafe condition, whether admitted or proved, of itself raises the presumption of negligence. This is always the case where there is a positive duty imposed by law. The burden of proving such a failure of legal duty rests upon the plaintiff, but when that fact is proved or admitted the burden of proving all such facts as are relied on by the defendant to excuse its failure rests upon the defendant. . . . Its contention that the accident was caused by the malicious conduct of some one for whom it was not responsible, and the consequences of whose act it could not have prevented by any reasonable degree of care, was an affirmative defense, by its very nature carrying with it the burden of proof." The following cases support the doctrine of the quotation: Houston & T. C. Ry. v. Gaither (Texas Civ. App.), 43 S. W. Rep., 266; Williams v. Levert Lumber Co. (La.), 38 So. Rep., 567; East Tennessee, V. & G. Ry. v. Kane (Ga.), 18 S. E. Rep., 18.

The rules enunciated in the foregoing cited cases are ones well settled, and the quotation from the North Carolina case has been made not because it announced any new theory, but because it applies the rules to the facts surrounding a derailment by the interference of persons not connected with the railroad, and for the purpose of emphasizing the principle that when a derailment is caused by a defect in the track, and an employe is killed, it would not matter how the defect occurred, the same duty would rest upon the railway company of exercising diligence in discovering the defect and in repairing it, and the burden would rest upon the railway to show that it had exercised reasonable ordinary care in making the discovery. The fact that outside malicious parties injured the track in such way as to derail the train, would be no defense, unless it appeared that care had been used to discover and repair ·the injury. It may be true that track walkers are not employed to prevent criminals from derailing trains, but they are employed to watch the track and discover any defects therein, and it would be a strange conception of law that would render the railway liable for negligence in not discovering a defect created by any other agency, but would absolve it from any duty as to the discovery of injuries designedly inflicted on the track. The law in that instance, as in others, places the duty upon railway companies of using ordinary care in discovering any defect in the track.

The charge given by the court, that if the derailment was caused by wreckers, was positive error and appellants were not called upon to ask special charges curing the vices in the charge. Chamblee v. Tarbox, 27 Texas, 140; Ford v. McBryde, 45 Texas, 498; Berg-

stroem v. State, 58 Texas, 92; Gulf, C. & S. F. Ry. v. Rowland, 90 Texas, 365.

The allegations of the petition were sufficient to raise the issue of negligence in a failure to properly inspect the track, although the rail may have been intentionally displaced by evil-minded persons not connected with appellee. The defense that the rail was displaced by trespassers could have been interposed under a general denial, and the answer specially setting up that defense did not render it incumbent upon appellants to answer that special defense in a supplemental petition in order to raise the question of a lack of diligence upon the part of appellee in discovering the injury to the track. The defense itself carried with it the obligation to show the exercise of ordinary care in discovering the injury. Speaking on this subject the Supreme Court of Georgia in the case of Railway v. Kane, hereinbefore cited, said: "The plaintiff proved that the switch was misplaced, and that such misplacement was the cause of the collision. The defendant sought in reply to show that the misplacement of the switch was not due to its fault, but that the mischief was done by an evil-disposed person, not in its service. The plaintiff, in turn, endeavored to meet the defense by proving that the company was negligent in affording the evil-disposed person an opportunity to carry out his designs, and in not taking the proper steps to prevent their successful accomplishment; in other words, the plaintiff sought to break down the defense of the company by showing that the facts alleged and proved by it involved a breach of diligence on its part in a material respect. It is quite clear to our minds that the plaintiff had a right to urge such breach of diligence, not as a distinct basis of recovery, but for the purpose of defeating the defendant's justification, and this the plaintiff could do, although she had not in her pleadings made any special reference to this particular negligence on the part of the defendant." In the case now before this court, however, there were distinct allegations of negligence in inspecting the track.

It is the duty of the master to furnish the servant with reasonably safe appliances with which to perform the work of the former. The care required in furnishing such appliances is ordinary care, that is, such care as would, under like circumstances, be exercised by a reasonably prudent person; but, as has been often held, ordinary care will require the exercise of a very high degree of diligence, under certain facts and circumstances, and what might be ordinary care under one set of circumstances, might be culpable negligence under another combination of circumstances. The care to be exercised is proportional to and measured by the necessities and exigencies of the time, place, occupation and situation. As applied to the facts of this case the exercise of ordinary care in inspecting and keeping in repair the track on a very sharp curve, at a dangerous place, may have required more at the hands of the railway company then on a straight track in a more highly favored locality, and what was necessary to constitute ordinary care at such a curve was the peculiar prerogative of the jury to determine under such a state of facts. While it may be the absolute law, that appellee was "not

bound to supply them (servants) a perfectly safe track, nor is it bound to exercise the highest degree of care which a very skillful and very careful expert in the business would exercise in supplying and caring for the track," the statement of such abstract propositions did not serve to guide the jury to a proper verdict, and were calculated to mislead them as to what should have been done by appellee under the circumstances. It is better in all cases to refrain from the statement of merely abstract propositions of law, and at times it may be positive error to state them to a jury. In the case of Hargis v. St. Louis, A. & T. Ry., 75 Texas, 19, a charge was commended because it contained no abstract propositions of law. That part of the special charge requested by appellees and given by the court, down to where it informed the jury that the duty of appellee to its employe was discharged by the exercise of ordinary care, was purely abstract, and may have misled the jury. There was no issue as to whether it was the duty of appellee to exercise the highest degree of care, or that it was its duty to furnish a perfect track, and there was no occasion to interpolate any such abstract theories into the case. We see no other objections to the charge. The twelve miles was referred to merely because that was the limit of speed at which trains were to be run around the curve.

We are of the opinion that the evidence of Shackleford to the effect that he told the roadmaster that Calk, the man who claimed to have inspected the road as he went over it on the handcar on the day of the accident, was too inexperienced to properly take care of "Baxter's Curve" was properly excluded, because it was merely an opinion of the witness which was not accepted by the roadmaster, and it did not tend to prove the incompetency of Calk. Shackleford swore that he was incompetent. The roadmaster swore that he was competent. Appellee did not contend that if Calk was incompetent it did not know it, but the contention was that he was thoroughly competent. Knowledge of the experience of Calk was not an issue in the case.

The witness Reyes stated all he knew about the sharpness of the curve, the condition of the rails, spikes and ties, and the court properly excluded his opinion as to the curve being dangerous. The witness was not shown to be an expert in such matters, and the jury could form an opinion as to the dangerous condition of the curve as well as the witness could.

If photographs of "Baxter's Curve" were properly identified, there could be no good reason for their rejection. They would tend to convey a better impression to the jury of the location than could probably be done by the descriptions of witnesses. The only identification would be that the photograph properly represented the scene and that could be sworn to by any witness who knew the fact. Blair v. Pelham, 118 Mass., 421; Turner v. Boston & Maine Ry., 158 Mass., 261; Archer v. New York, N. H. & H. Ry., 106 N. Y., 589; Robinson v. City of St. Joseph (Mo.), 71 S. W. Rep., 465. "It is immaterial whose hand prepared the thing, provided it is presented to the tribunal by a competent witness as a repre-

sentation of his knowledge." Wigmore, Ev., secs. 790 and 792, and notes.

There is no merit in the eighth assignment of error. There is nothing in the bill of exceptions indicating what the excluded answer of the witness Campbell would have been. This is absolutely necessary in a bill of exceptions taken to the exclusion of evidence.

The court properly excluded that part of the witness Shackleford's testimony to the effect that while engaged in working on the curve sufficiently to keep it in repair other parts of the track would get in bad condition. It was immaterial and was not responsive to the question asked.

The evidence of Ellison as to his having heard of wrecks at Baxter's Curve was hearsay and was properly excluded. It may be that the proper objection was not urged to the evidence, but it was properly excluded anyway.

The twelfth assignment of error seeks to have this court review the action of the court below in admitting the opinions of certain witnesses as to whether the track had been tampered with by trespassers, when no objection was made to the admission of the evidence and no bill of exceptions reserved thereto, merely because such evidence may be offered on another trial. This court is too busily engaged in the consideration of questions properly brought in the records of cases, to permit it, if it so desired, to go outside the record and enter into the discussion of questions that might possibly arise on another trial. For the reasons given the judgment is reversed and the cause remanded.

*Reversed and remanded.*

Application for writ of error dismissed for want of jurisdiction.