(61 Misc. Rep. 291.)

## M. McGIRR SONS CO. v. BABBITT.

(Supreme Court, Appellate Term.   December 16, 1908.)

1. EVIDENCE (§ 380*)—PHOTOGRAPHS—AUTHENTICATION.

In an action for the price of material for filling land, which defendant refused to receive as not complying with the contract, and which had then been dumped along a railroad track, photographs of the material placed along the track were admissible to show the character of the material, where defendant's engineer and night watchman testified that plaintiff unloaded all the material from the scow and placed it along the track, that it consisted of old furniture, barrels, boxes, etc., and that the photographs were correct representations of the ground with the material lying on it immediately after it was removed from the scow.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. § 1657; Dec. Dig. § 380.*]

2. EVIDENCE (§ 380*)—PHOTOGRAPHS—IDENTIFICATION.

It is no objection to the admission of photographs in evidence that the witness identifying them and testifying to their correctness did not take them.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. § 1657; Dec. Dig. § 380.*]

3. CONTRACTS (§ 350*)—ACTIONS—EVIDENCE—PERFORMANCE.

In an action for the value of filling material which defendant refused as not complying with the contract, evidence *held* insufficient to sustain a verdict for plaintiff.

[Ed. Note.—For other cases, see Contracts, Cent. Dig. § 1819; Dec. Dig. § 350.*]

Appeal from Municipal Court, Borough of Manhattan, Third District.

Action by the M. McGirr Sons Company against B. T. Babbitt. Judgment for plaintiff, and defendant appeals. Reversed, and new trial ordered.

Argued before GIEGERICH, HENDRICK, and FORD, JJ.

Baldwin, Wadhams, Bacon & Fisher (William H. Wadhams, of counsel), for appellant.

Daniel J. Early (James F. Higgins, of counsel), for respondent.

GIEGERICH, J.   The action is to recover the price of a scow load of filling material consisting of ashes, which the plaintiff claimed to have delivered by scow upon the lands of the defendant at Babbitt, N. J., in the course of the performance of a contract for filling in around its buildings and for the value of certain work done in grad-

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

113 N.Y.S.—48

ing such lands after they were filled in, and claimed to have been performed after and in addition to the grading called for by the contract, and for which the plaintiff claims the defendant promised and agreed to pay. Both claims were disputed; the defendant asserting that it refused to accept the contents of said scow because it was not filling material "clean and free from rubbish and garbage" as required by the contract, and that it had, therefore, been rejected, and denied that it promised to pay for such grading, and claiming, furthermore, that it was not extra work for the reason that the contract provided the plaintiff should "grade and fill from said buildings in accordance with the grade stakes set by you" (defendant).

It appears from the evidence that on August 31, 1906, the scow in question landed at the defendant's dock at Babbitt, N. J., but there was a sharp conflict of evidence upon the trial as to what its contents were. According to the testimony adduced for the plaintiff, such scow contained 653 cubic yards of ashes, and that on top of it there was firewood, consisting of barrels and boxes, while the defendant's witnesses, on the other hand, gave testimony to the effect that the scow was piled up with all kinds of old furniture, barrels, rubbish, old mattresses, old bedsteads—"all kinds of stuff"—with nothing else except dust on such rubbish, which it is claimed extended down to the deck of the scow, and that there was no filling whatever of any kind in the load. In support of the ground taken by the plaintiff, as above stated, it called witnesses who testified that the capacity of the scow varied; that the one in question held 1,000 cubic yards, while some held 400 and others held 1,200 or 1,300 cubic yards, and that there were 653 cubic yards of ashes upon the scow in question by actual measurement; that no objection was made to the material on the scow except that dust was in it; that no permission was asked of the defendant by the plaintiff's employés to land the material from the scow; and that the defendant's employés never refused to let the plaintiff's men unload the scow, but merely asked what they "were going to do with the wood"; furthermore, that the contents of the scow were dumped along the railroad track "to put a shoulder on one side of the railroad." The evidence adduced on the part of the defendant, on the other hand, tended to show that the scow was piled up with nothing but the sundry wooden material referred to, which reached down to the deck of the scow, which deck formed the surface on which the load rested; that there was not any dirt visible; that there was no filling, cinders, or ashes of any kind as called for by the contract, all of which, it is claimed, clearly appears from a photograph which was taken before the scow was unloaded and was admitted in evidence, and was testified to as being a correct representation of the scow and its contents at the time referred to. There was further testimony given for the defendant to the effect that the defendant's engineer told the plaintiff's superintendent that he would not, under any conditions, accept the contents of the scow because it contained nothing but rubbish; that he did not measure the contents of the scow because he would not accept it on account of its not conforming to the requirements of the contract; that, after being told that it was more expen-

sive to tow the scow back to New York than to unload it, he finally permitted the plaintiff to unload its contents along the railroad track, not on the parts of the defendant's ground specified in the contract, but at least 1,000 feet from any of the defendant's buildings.

The defendant's engineer in charge of the work testified that there was no rubbish along the railroad track in the way of boxes, bedsteads, and furniture before they unloaded the scow; that he saw the material lying on the ground afterwards, and that certain photographs offered in evidence were correct representations of the ground with the material lying on it; that the premises had not changed in appearance since the material referred to had been placed there except the change of time, rain, and weather; the photographs so offered were a correct representation of the appearance of the premises immediately after said material was removed from such scow in September, 1906; that the witness was there nearly every day as an engineer in charge; that he knew everything that was put on the premises, knew of his own knowledge that the pictures were a correct representation of the condition as existing in the month of September, 1906. The photographs were excluded upon the plaintiff's objection on the grounds, firstly, that it did not appear when they were taken; secondly, that it did not appear that it was all material from the scow in suit; and, thirdly, the witness said that he did not take the photographs.

It is conceded by the plaintiff's counsel that the first objection was met by testimony that the photograph was taken a month or two before the trial, but it is still urged that the second objection has never been met, and that it does not appear anywhere in the testimony that the material and stuff that the defendant photographed was the material and stuff taken from the scow, and that the nearest approach is in answer to the question, "And did you see the material after it was unloaded from the scow and placed along the track? A. I saw the scow when it was partly unloaded,"—and in answer to the further question, "Did you see the material lying on the ground? A. Yes, sir; I did." But a reading of the stenographer's minutes shows that the plaintiff's counsel is in error; there being, as already noted above, other testimony of the engineer to which he has failed to call attention. Moreover, the testimony of the engineer is corroborated by that of the defendant's night watchman who testified that he saw the scow unloaded; that the material taken from it was old furniture, barrels, and boxes, and that it was put on both sides of the railroad track; that he stood there from 2 o'clock in the afternoon until 6 o'clock on one day, and again on the following day from 4 until 6 o'clock, and on cross-examination he testified:

"They began to unload in the morning, and throwed it on both sides of the track.

"Q. All of it?  A. All of it."

. He further testified that on the next day he saw them unload from 4 o'clock until 6 o'clock, and that he saw the scow empty.

The third ground of objection was not discussed in the briefs nor urged upon this appeal by the defendant, but, even if it had been, such

objection would not have been well taken.  Nies v. Broadhead, 75 Hun, 255, 27 N. Y. Supp. 52.

From what has been stated it is evident that the photographs so excluded should have been admitted, although they were not taken until within a month or two of the trial (People v. Buddensieck, 103 N. Y. 487–500, 9 N. E. 44, 57 Am. Rep. 766), because they had a very important bearing upon the question arising as to the contents of the scow, in regard to which, as seen, there was a sharp conflict of evidence.

As already stated, the plaintiff's theory is that there was some firewood on top of the load of filling in the scow, and that it was filled to within more than three-fifths of its carrying capacity with a load of ashes underneath, which ashes, according to measurements furnished by the plaintiff, were 89 feet long, 24 feet and 9 inches wide, and 8 feet deep or high.  Testimony was further given for the plaintiff that the filling material went from side to side of the scow, and was across the rail, but the defendant claims that the photograph of the scow shows that this is untrue.  The defendant further claims that the model of the scow which was also marked in evidence shows that the deck is flush with the rail, so that the eight feet must be from the rail up, which its counsel insists is impossible.  This is explained by the following testimony of the plaintiff's president.

"Q. Did any of it [load] come out of the edges?  A. Came out of the—as a rule it seldom does if it is above the box.  The box is a little rail that runs along.  It seldom goes out from that, from the top of that box.  If it did, if they got into any kind of sea, it would wash off, but this particular scow had lots of free board, and it would not wash off.

"Q. There wasn't any kind of hole there built inside?  A. This rail here is what I speak of.  The material was across the rail, the good material.  Any boxes or barrels that fell off, of course, that might occur."

The presence of old wooden material on top of what the plaintiff claims was a load of ashes is thus explained by the plaintiff's president, who, on cross-examination, testified:

"When she left New York, she had some wood on that I sent down there for making fires under the machinery, building fires.  The material was on top, the barrels and boxes.  When I got to burn it—
"Q. How did you happen to do that?  A. What's that?
"Q. How did you happen to send down wood for making fires?  You were filling in, weren't you?  A. It was necessary to send down wood for making fires unless we bought it somewhere, and there was no place to buy it that I know of.  We had to have wood to start the fires.  There was a little sent down at one other time on the bow of one of the boats."

It may be fairly concluded from the testimony just quoted, as well as from that of the defendant's engineer hereinbefore noted, that there was no wood for burning upon the defendant's lands when the scow in suit arrived there on August 31, 1906.  The quantity of so-called firewood upon the defendant's premises at the point indicated by the witness immediately after the contents of the scow were unloaded in September, 1906, was therefore an important element to be considered in determining whether or not the photograph so excluded should have been admitted.  As above stated, such photographs were shown to truly represent the place as it was right after the load had

been discharged there; and if, as is claimed, they showed the presence upon the defendant's land along the railroad track of rubbish of the character described by the defendant's witnesses in quantities in excess of that claimed to have been carried by the plaintiff upon the scow, then it was clearly error to exclude them.

The plaintiff's superintendent testified in answer to the following questions, as follows:

"Q. Now, what did you do with those boxes and barrels? A. Removed them on the dock, off the scow, on to the dock."

The record does not contain any evidence on the plaintiff's part showing definitely what became of such barrels and boxes, unless it may be inferred from the testimony of the plaintiff's president that the "material" was put along the railroad track. Moreover, there was no testimony introduced by the plaintiff to show whether such barrels and boxes were used for the purpose of building a fire under the machinery, which, as seen, was claimed to have been the plaintiff's purpose in sending them to the defendant's premises, and, if we may infer from the said testimony of the plaintiff's president that such old wooden material was dumped along the railroad track, which fact clearly appears from the testimony given in behalf of the defendant, then, if barrels and boxes could be clearly distinguished upon such photographs, such exhibit would have probative value in showing that the plaintiff's explanation was a pretext and that the wood was brought not to burn, but to be counted as filling, and that, when it failed of that use, it was thrown away. The photographs so excluded do not appear to have been marked for identification, and are not among the papers and exhibits constituting the return; but, since it is not denied by the plaintiff that they do show the presence of material of the character claimed, I have assumed such to be the fact in disposing of the question. Furthermore, evidence that such was the fact is found in the above testimony of the defendant's engineer as to what he saw upon the defendant's lands after the contents of the scow were unloaded, and in his further testimony that the photographs were correct representations of the ground and the material lying upon it, and that he "could go down and pick out some of the things that are lying there now."

After carefully considering the evidence, I am also of the opinion that the judgment, so far at least as it is based upon the alleged cause of action for a scow load of filling material, is contrary to the weight of evidence, and, in view of this and of the conclusion already reached that the trial justice committed error in excluding the photographs above referred to, it will not be necessary to discuss the other grounds relied upon to reverse the judgment.

The judgment should therefore be reversed, and a new trial ordered, with costs to the appellant to abide the event. All concur.