WAMPUM COTTON MILLS v. CAROLINA AND NORTHWESTERN RAILWAY COMPANY.

(Filed 5 May, 1909.)

PLAINTIFF'S APPEAL.

**Railroads—Penalty Statutes—Tender of Freight—Placing it on Platform—Evidence—Questions for Jury.**

The mere placing of freight on the freight platform of a railroad company and asking the agent when he could ship it does not amount to a tender of shipment, the refusal of which will make the company liable for the penalty prescribed by the statute (Revisal, sec. 2631) ; and when from the evidence it appears that the language used and the conduct of the parties left it in doubt as to whether a tender or daily tenders had been made and refused, it is for the jury to find whether any or how many of such tenders had been made.

ACTION tried before *Justice, J.,* and a jury, at September Term, 1908, of LINCOLN.

Plaintiff sued for a penalty of $50 a day for seventy-two days, alleging that defendant refused on each day to receive freight tendered for shipment. The evidence tended to show that plaintiff deposited on the defendant's platform, the usual place for receiving freight, twenty-five bales of cotton waste, and tendered it to defendant's agent for shipment, which was refused. The bales were left on the platform. Plaintiff's president says: "Later on I called to see the agent, from time to time, as I was passing from my place of business. Every day or two I stopped to see whether or not he was in a position to ship the waste, and he said he was not," etc.

Mr. Carter, defendant's agent at Lincolnton, after testifying in regard to the transaction substantially as the president of plaintiff company, said: "After that, Mr. Abernathy made a further tender of this shipment of waste, once that I remember. That was some little time after. I could not give the exact date. It was along the latter part of March or first of April. * * * He told me he would tender it to me again for shipment."

His Honor instructed the jury that it was not enough to constitute a tender that the plaintiff placed the freight on defendant's platform merely as a matter of convenience, but that it must tender it for shipment; that simply asking the agent when the freight could be shipped was not a tender; that the president must have made an actual tender, and the defendant a refusal, to entitle plaintiff to the penalty; that it was not essential that any particular language be used to constitute a tender and refusal, but that if such language was used as "amounted in common understanding" to a tender and refusal, that would be sufficient. The plaintiff excepted. Plaintiff tendered a number of prayers for special instructions not necessary to be set out. The jury answered the third issue, "Two days," and the fourth, "One hundred dollars." Judgment was rendered upon the verdict. Plaintiff excepted and appealed.

*A. L. Quickel* for plaintiff.
*O. F. Mason, C. E. Childs* and *J. H. Marion* for defendant.

150—39

CONNOR, J., after stating the case: The evidence left the question of the status of the freight, after the first tender and refusal, in doubt. It seems that the freight was placed upon the defendant's platform in accordance with a custom, but without any express contract with defendant. After completing the number of bales constituting a car load, the president tendered it to the agent for shipment, which was refused. The freight remained on the platform, and the president of plaintiff company frequently talked with the agent about shipping. There is evidence that, some thirty days after the tender, he made a second tender. In *Garrison v. Railroad, ante,* 575, it was conceded that defendant furnished the car upon which plaintiff loaded the lumber, and it remained on the car until shipped. There the facts were conceded. We concur with his Honor's instruction to the jury, that the status of the freight was uncertain. This is shown by the conduct of the parties. It was therefore a question for the jury, and was properly left to them. If the plaintiff wished to insist upon a daily tender and refusal, its president should have made it clear to defendant's agent that he was keeping the tender good. We cannot undertake to do more than dispose of each case as it arises in regard to what constitutes a tender and refusal. When the conduct and language of the parties leaves the matter in doubt it must be submitted to the jury. His Honor correctly told the jury that they must find that there was a tender and refusal each day. Upon an examination of the entire record and the charge of the court we find

No Error.

CLARK, C. J., dissenting: Concurring entirely in the opinion in the defendant's appeal in this case, I must dissent from the conclusion reached in the plaintiff's appeal.

The court should have instructed the jury that if they believed the evidence to find a verdict in favor of the plaintiff for the penalty prescribed by the law, for seventy-two days. The evidence is uncontradicted that the plaintiff placed on the defendant's platform, the usual place for receiving freight, twenty-five bales of cotton waste, and tendered it to the defendant's agent for shipment, which was refused. The bales were left on the

platform.  The plaintiff's chief officer called to see the defendant's agent·every day or two thereafter to learn if he was ready to ship the waste, and he said he was not.

The law of tender is as old as the hills and as well settled. When one tenders money, for instance, it is not necessary to tender it again every day.  It is sufficient if it is "kept good." Here the tender was made and kept good.  The cotton remained on defendant's platform, a standing tender, irrespective of the constant reminder by the plaintiff's agent.

The statute makes, and was intended to make, the common carrier liable for every day that he thus refuses to accept freight.

The people of this country make and have a right to make its laws.  The business interests of the country, great and small, are absolutely at the mercy of the railroads, and can be destroyed at will, unless these great common carriers are·subject to public regulation.  Experience having demonstrated that the common-law remedy by damages is not always adequate where common carriers refuse to receive freight when tendered, or fail to ship and transport in a reasonable time, the people have enacted, through their Legislature, that in such cases a prescribed penalty, in the nature of liquidated damages, shall be recovered by the "party aggrieved."

If such penalty is high in this case, it is because the defendant persisted in its violation of the law.

The courts have no choice but to obey the law themselves. For seventy-two days the plaintiff's bales stood on defendant's platform awaiting shipment. . The bales had been tendered for shipment, and refused.  For seventy-one more days they stood on that platform awaiting shipment.  Every day the defendant's agent saw them and knew they were there for shipment, besides being constantly reminded by the plaintiff's officer.  Every day the bales remained there the defendant's agent knew they were a standing tender, and his not shipping them was a refusal, for "actions speak louder than words."  *Pierson v. Telegraph Co., ante,* 559.  Had the defendant's agent each day said, "I will ship them," and then had not shipped, could it be said that in fact he had not refused and therefore that the defendant would not be liable?  Such construction would be but trifling with the law.

The law says that for each day the carrier refused to ship the plaintiff was entitled to recover $50. The Legislature thought this penalty necessary to compel respect for the rights of shippers. The evidence being uncontradicted, the court should have told the jury that if they believed it they should return a verdict in favor of the plaintiff for seventy-two days, at $50 per day. When the law is enforced it will be respected and obeyed.

---

### DEFENDANT'S APPEAL.

1. **Railroads — Penalty Statutes — Connecting Lines — Embargo — Tender by Initial Carrier.**

   The penalty imposed by the Revisal, sec. 2631, is enforcible against a railroad company refusing to receive freight when tendered, though to reach destination it was necessary for another road to receive and transport it beyond the junctional point; and it is no valid excuse that the connecting line had laid an embargo on the consignee, for it was the duty of the initial carrier to transport the goods and make a tender to the connecting line to be relieved of the penalty.

2. **Railroads — Penalty Statutes — Interstate Commerce.**

   The penalty imposed by the Revisal, sec. 2631, is not a burden upon interstate commerce when shipments are intrastate.

ACTION for recovery of penalty for failing to receive goods for shipment.

The facts, as stated in defendant's brief, are: Defendant is a common carrier, with track and equipment running from Lenoir, N. C., to Chester, S. C., through Lincolnton, N. C., intersecting with the Southern Railway at Gastonia, N. C., both roads using the same depot, the property of the Southern. The Southern runs from Gastonia to Charlotte, N. C. Defendant receives freight for shipment to Charlotte, delivering to the Southern at Gastonia. The Seaboard Air Line Railway runs from Lincolnton to Charlotte. The defendant and the Seaboard use at Lincolnton a depot in common. On 6 March, 1907, B. G. Fallis, superintendent of the Southern Railway at Charlotte, sent the following notice to the general manager of defendant company at Chester: "Until further notice, we will not accept any cotton

waste from your road consigned to the South Atlantic Waste Company, Charlotte, N. C. Please be governed accordingly." This embargo was raised 20 May, 1907, and then only as to three cars per day·from defendant. On 11 March, 1907, plaintiff tendered to defendant company, at Lincolnton, N. C., twenty-five bales (one car load) of cotton waste for shipment to the South Atlantic Waste Company, Charlotte, N. C. The agent of defendant declined to receive this shipment, assigning as a reason that he had instructions from his company not to receive it because of the embargo against the South Atlantic Waste Company. Thirty days later the agent of defendant company offered to issue a bill of lading to plaintiff, "Subject to delay, on account of embargo at Gastonia." The plaintiff declined to accept this proposition, and suggested to defendant's agent to carry the waste to Gastonia and tender it to the Southern. There is evidence tending to show that it would not have been received by the Southern at Gastonia. There was evidence tending to show that defendant's manager and officers made several efforts to induce the Southern Railway Company to accept this particular shipment, but in each instance was notified that the Southern would under no circumstances accept the shipment. A request was also made to the Seaboard company and refused. There was no contention that the defendant did not have room to store and care for the freight at Lincolnton, nor that it did not have motive power and cars sufficient to carry it to Gastonia. There was evidence that the tracks and yards of the Southern at Gastonia were congested. His Honor was of the opinion that the statute (section 2631, Revisal) made it the duty of the defendant to receive the freight for shipment, carry it to Gastonia and tender it to the Southern Railway Company; that the embargo placed upon shipments to the waste company was not a legal excuse for defendant's refusal to receive it for shipment at Lincolnton, and so instructed the jury. Defendant excepted. There was a verdict and judgment for plaintiff. Defendant excepted and appealed.

CONNOR, J. This action is prosecuted for the recovery of the penalty imposed by section 2631, Revisal, for refusing to receive

for shipment freight tendered defendant at Lincolnton, N. C., to be transported to Charlotte, N. C. We have discussed and decided many of the questions presented and argued upon this record in *Garrison v. Railroad, ante,* 575. As we then endeavored to point out, there is no question of transportation and delivery involved in this case. The sole question is whether the reasons assigned by defendant for refusing to receive for shipment constitute a legal excuse. There is no suggestion that the defendant's warehouse at Lincolnton was insufficient to care for the freight until it could be shipped, or that defendant did not have the cars, motive power and other facilities for carrying the freight to Gastonia and tendering it to the Southern Railway. Defendant's agent says that it could have been handled as far as Gastonia. It was clearly its duty to comply with the requirement of the statute by receiving for shipment and throwing upon the Southern Railway the responsibility for failing to perform its duty at Gastonia. The fact that the Southern Railway maintained an embargo upon shipments to the waste company at Charlotte could not excuse the defendant from discharging its duty at Lincolnton. We have no doubt that the defendant's officers and agents acted in good faith in endeavoring to induce the Southern Railway to promise to take the freight at Gastonia, but this did not measure up to the standard of its common-law or statutory duty. It should have received the freight, carried it to Gastonia and then tendered it to the Southern Railway. If, by simply ordering an embargo against one of its customers at Charlotte, the Southern Railway could paralyze all of the connecting roads and relieve them from the duty to receive shipments to such person, the common law would fail and the statutes passed to enforce the public duty be of no avail. One company could destroy the business of any person or corporation, starve it out of existence, bankrupt it by ordering an embargo and notifying all other roads that it would not receive freight for the person selected as the subject for discrimination. Each company must discharge its duty and cast the responsibility for refusing upon the one which is derelict. There is no question of interstate commerce involved in this case. It is immaterial that plaintiff asked for a bill of lading to Charlotte. If defend-

ant had received the freight for shipment to Gastonia, its terminus for Charlotte freight, or offered to do so, it would have met and discharged the duty imposed upon it. This it failed to do, but, thirty days after refusing to receive the freight, offered a bill of lading containing a provision which would have deprived plaintiff of any redress against the Southern Railway if it had refused to receive at Gastonia. The defendant company was placed by the action of the Southern Railway in an embarrassing position. We are not able to understand, upon the evidence, why the Southern Railway selected the Carolina Waste Company, of Charlotte, as the subject of its embargo for more than two months. It is true that there is evidence that the general demand upon its capacity for transporting freight was very heavy, and that a large number of unloaded cars were on its tracks and yards at Charlotte and Gastonia, but this certainly does not justify it in imposing upon one manufacturing plant an embargo for seventy-two days, cutting off its supply of raw material, not only over its own line, but from its connecting lines. If this can be done with impunity, the power of control and regulation, so essential to the protection of the rights of all persons complying with the law to be served without discrimination, would be of but little value. We concur with his Honor that it was the duty of defendant to receive the freight for shipment and cast upon the Southern Railway the responsibility of discharging its duty. It elected to obey the Southern Railway Company rather than the law. The fact that the discharge of its duty to the plaintiff would have imposed the liabilities of a common carrier is no excuse for refusing to do so. It is given by the State the franchise and the right to do business as a common carrier in consideration of its assuming and performing the duties incident to the business.

Upon a careful examination of the entire record we are of the opinion that his Honor correctly instructed the jury. There is

No Error.