MAX BANE v. ATLANTIC COAST LINE RAILROAD COMPANY.

(Filed 12 April, 1916.)

### 1. Carriers of Goods—Penalty Statutes—Tender of Shipment.

In order for the daily penalty to attach to the carrier for continually refusing to accept freight for shipment under the provisions of Revisal, sec. 2631, it is necessary for actual or constructive tender thereof to be made to the carrier each day; and where cattle are the subject of shipment, evidence that the shipment had been refused and that the shipper kept the cattle near the depot and told the defendant's agent thereof, and that he would deliver them when notified that the company would receive them, is insufficient except as to the first penalty, notwithstanding the shipper would have delivered them for shipment upon being so notified. *Garrison v. R. R.,* 150 N. C., 587, where the shipment was loaded on car and the carrier refused to issue bill of lading, cited and distinguished.

**2. Evidence—Photographs—Accuracy—Evidence.**

    Photographs of the subject of the inquiry may be introduced in evidence, when shown to be a true representation by the testimony of witnesses, without the necessity of proving this fact by the photographer who took them.

**3. Appeal and Error—Objections and Exceptions.**

    In an action to recover damages from a railroad company alleged to have been caused by the wrongful failure of the defendant to accept them for shipment, objection to the testimony of the plaintiff as to the price for which he sold them will not be sustained when it appears he had already given this testimony without objection.

**4. Evidence—Testimony of Fact—Opinion—Condition of Cattle—Carriers of Goods.**

    Where the condition of cattle is the subject of the inquiry on the question of damages for the wrongful failure of the defendant railroad company to accept them, testimony of one who had seen the cattle, that they were in good condition, is held to be a statement of a fact, and not objectionable as a statement of the opinion of the witness.

APPEAL by plaintiff from *Allen, J.,* and a jury at September Term, 1916, of DURHAM.

Civil action to recover a penalty against the defendant for refusal to receive for shipment a car-load of cattle which the plaintiff alleges he tendered to be shipped from Roseboro, N. C., in Sampson County, to Clayton, N. C., in Johnston County, and damages which the plaintiff alleges he sustained by reason of the failure to receive and transport the cattle.

The plaintiff testified that he tendered said cattle at Roseboro, N. C., for shipment to Clayton, N. C., on 14 February, 1914, and that the agent of the defendant refused to accept them, and that by reason of such failure he was forced to keep the cattle in an open lot exposed to the weather, and that they were damaged thereby.

The cattle were shipped on 18 February, 1914, to Clayton.

The defendant's witnesses testified that the cattle were not tendered for shipment to Clayton on 14 February, but, on the contrary, were tendered for shipment to Durham, N. C.; that the cattle were not accepted for shipment to Durham because Sampson County was in quarantine territory and Durham County was in open territory, and that the plaintiff had not complied with certain quarantine regulations of the Department of Agriculture.

The plaintiff also offered evidence tending to prove that the defendant had no inclosure on its right of way at Roseboro where the cattle could be kept; that he drove the cattle to Roseboro on 14 February, and tendered them for shipment, and that the agent of the defendant refused to accept them; that he then placed the cattle in a lot about 200 yards from the depot and notified the agent of the defendant that they were

in the lot ready for shipment at any time he would ship them, and that one Fillyaw would be in charge of the cattle; that the said Fillyaw saw the agent of the defendant each day and made inquiry as to whether the cattle would be received for shipment.

The evidence for the defendant tended to prove that the cattle were never tendered for shipment to Clayton until 18 February, 1914, when they were received and shipped.

The plaintiff was permitted to introduce a photograph of the cattle alleged to have been taken at Roseboro on 14 February, 1914, and the defendant excepted. The photographer who made the photograph was not introduced as a witness, but one or more witnesses for the plaintiff testified that the photograph was correct.

The plaintiff contended that he was entitled to recover a penalty of $50 a day for the four days, 14, 15, 16, and 17 February. This was denied by the defendant.

His Honor charged the jury, among other things, as follows:

"It is a contention there that he must tender them each day. I do not charge you that, but charge you on that issue as follows: That the evidence in this case shows that the railroad company had no cattle pen or lot at its station at Roseboro, and if you are satisfied from the evidence that after defendant had refused to ship plaintiff's cattle, that plaintiff notified the defendant's agent that he would keep his cattle near the depot ready for shipment at any time he, the defendant's agent, would accept them, then I instruct you that the plaintiff's keeping the cattle there ready for shipment at some place near by and convenient for them to be reached and shipped, and that was done with the defendant's knowledge, or its agent's knowledge, it would be a sufficient tender of them to the railroad, and the plaintiff would not be required to demand of the railroad company to ship his cattle each day." The defendant excepted.

The jury returned the following verdict:

1. Did the defendant wrongfully refuse to accept the plaintiff's cattle for shipment, as alleged in the complaint? Answer: "Yes."

2. If so, for how many days did the defendant wrongfully refuse to accept plaintiff's cattle for shipment? Answer: "Four days."

3. What amount, if any, is the plaintiff entitled to recover of the defendant as penalties? Answer: "$200."

4. What damages, if any, is the plaintiff entitled to recover of the defendant by reason of the defendant's refusal to accept plaintiff's cattle for shipment? Answer: "$700."

Judgment was rendered upon the verdict in favor of the plaintiff, and the defendant appealed.

*Brawley & Gantt and L. P. McLendon for plaintiff.*
*Harry Skinner, L. C. Cooper, and Fuller & Reade for defendant.*

BANE *v*. R. R.

ALLEN, J. The Revisal, sec. 2631, makes it the duty of transportation companies to receive all articles of the nature and kind received by such companies for transportation "whenever tendered at a regular depot, station," etc., and imposes a penalty of $50 "for each day said companies refuse to receive such shipment."

The construction placed upon the statute is "that it was intended to impose a penalty for each day upon which the freight was at the depot ready for shipment" (*Garrison v. R. R.*, 150 N. C., 587), and that before the penalty can be recovered the jury "must find that there was a tender and refusal each day." *Cotton Mills v. R. R.*, 150 N. C., 610.

It was also strongly intimated in the first of these cases that it would not always be necessary to make an actual tender of the shipment, the Court saying, in reference to a shipment of lumber: "To require the plaintiff to haul the lumber home and return it to the depot each day or to go through the empty form of making a constructive tender imposes either an unwarranted hardship or savors of trifling with a man's substantial rights;" but this was said upon facts showing that the shipment in controversy had been placed upon the car of the defendant company and was in its possession, and that it had refused to issue bill of lading and to ship.

The two decisions, when considered together, give authoritative construction that each day for which a penalty is demanded is treated as separate and distinct, upon the theory that when there has been a tender and refusal on one day the penalty of $50 is imposed, and that this closes the transaction, nothing else appearing; and that, if further penalties are demanded, the plaintiff must thereafter prove a tender and refusal.

If these principles are applied to his Honor's charge, it appears that he enlarged the liability of the defendant beyond the scope and spirit of the statute. He expressly refused to charge that there must be a tender and refusal each day, and then, assuming that a constructive tender was sufficient, he made this depend alone upon the plaintiff's readiness to ship and knowledge upon the part of the agent.

The plaintiff may have been ready and willing to ship, and the defendant's agent may have known of this fact, and still no penalty would accrue unless there was an offer or tender of the shipment either actual or constructive.

If, as his Honor stated to the jury, the cattle were in a lot near by, it was not necessary that they should be driven from the lot to the station each day, but the plaintiff or his agent ought to have offered to do so in order to make good their tender, and this important element was omitted from his Honor's charge.

A tender imports not merely the readiness and the ability to pay or perform, but also the actual production of the thing to be paid or

delivered over, and an offer of it to the person to whom the tender is to be made.   38 Cyc., 132.

The relation of debtor and creditor furnishes an analogy.   The debtor may be able and ready to pay, and the creditor may know this, but there is no tender unless the money is produced and offered to the creditor, or unless there is a waiver of the tender; and the debtor must seek the creditor and not the creditor the debtor.

Under his Honor's charge, and upon the plaintiff's evidence, a penalty of $50 having already accrued for failing to receive the shipment on the first day it was tendered, the duty was imposed upon the agent of the defendant of going out and hunting up the plaintiff to notify him that he would receive the shipment in order that it might be relieved of further liability for penalties; whereas the duty was upon the plaintiff of finding the agent of the defendant and offering to deliver the cattle for shipment in order that the penalty might ·be imposed.

The failure of his Honor to incorporate in his charge the principle that there must be an offer or tender each day, actual or constructive, prefaced by the statement to the jury that he would not charge that there must be a tender and refusal each day, was important and material in view of the conflict in the evidence, the agent of the defendant denying that there was a tender and refusal and the evidence for the plaintiff tending to prove an offer each. day.

The other exception principally relied on is to the introduction of the photograph of the cattle, alleged to have been taken on 14 February, while they were at the depot of the defendant.   Photographs are admissible in evidence when shown to be a true representation and to have been taken under proper safeguard (*Davis v. R. R.,* 136 N. C., 115; *Pickett v. R. R.,* 153 N. C., 148; *Lupton v. Express· Co.,* 169 N. C., 673), and it is generally held that these facts may be proven by other witnesses without introducing the photographer.   17 Cyc., 415; *Carlson v. Benton,* 66 Neb., 486; 1 A. and E. Anno. Cases, 159 and note; *McKarren v. R. R.,* 194 Mass., 179; 10 A. and E. Anno. Cases, 961; *Hughes v. State,* 126 Tenn., 40; 29 A. and E. Anno. Cases, 1263.

The Court says, in the authority last cited: "The fact that the photograph was not proven by the photographer who made it was immaterial.  *McGirr Sons Co. v. Babbitt,* 61 Misc., 291, 113 N. Y. S., 753; *Smith v. Central Vermont R. Co.,* 80 Vt., 208, 67 Atl., 535; *McKarren v. Boston & N. St. R. Co.,* 194 Mass., 179, 80 N. E., 477, 10 Anno. Cases, 961, and note; *Consolidated Gas, Electric Light and Power Co. v. State,* 109 Md., 186, 72 Atl., 651; *Indiana Union Traction Co. v. Scribner,* 47 Ind. App., 621, 93 N. E., 1014.   The accuracy of photographs may be proven by any one who knows the fact.  *Thompson v. Galveston, H. and S. A. R. R. Co.,* 48 Tex. Civ. App., 284, 106 S. W., 910; *Consolidated Gas, Electric Light and Power Co: v. State, supra."*

There was evidence that the photograph was not a true representation of the cattle of the plaintiff, but several witnesses testified that it was correct and accurate, and this was sufficient to justify its admission in evidence.

We have examined the other exceptions, and find no error in the rulings of his Honor.

The statement of the plaintiff as to the price for which he sold the cattle, which was objected to, had already been made without objection, and there is nothing in the record to show what the answer of Dr. Smith would have been to the questions asked him, which were excluded.

The statement of the witness that the cattle were in good condition, which was objected to upon the ground that it was an expression of opinion, falls clearly within the rule in *S. v. Leak,* 156 N. C., 647, stated as follows:

"The instantaneous conclusions of the mind as to the appearance, condition, or mental or physical state of persons, animals, and things, derived from observation of a variety of facts presented to the senses at one and the same time, are, legally speaking, matters of fact, and are admissible in evidence. A witness may say that a man appeared intoxicated, or angry, or pleased. In one sense the statement is a conclusion or opinion of the witness, but in a legal sense, and within the meaning of the phrase, 'matter of fact,' as used in the law of evidence, it is not opinion, but is one of the class of things above mentioned, which are better regarded as matters of fact. The appearance of a man, his actions, his expressions, his conversation—a series of things—go to make up the mental picture in the mind of the witness which leads to a knowledge which is as certain, and as much a matter of fact as if he testified, from evidence presented to his eyes, to the color of a person's hair or any other physical fact of like nature. This class of evidence is treated in many of the cases as opinion admitted under exception to the general rule, and in others as matter of fact—'shorthand statement of fact' as it is called. It seems more accurate to treat it as fact, as it embraces only those impressions which are practically instantaneous, and require no conscious act of judgment in their formation. The evidence is almost universally admitted, and very properly, as it is helpful to the jury in aiding to a clearer comprehension of the facts."

For the reasons given there must be a new trial on the second and third issues.

Partial new trial.