## STATE v. CHARLES BUSH.

(Filed 19 February, 1919.)

### 1. Spirituous Liquor—Possession—Evidence—Trials—Questions for Jury.

Evidence tending to show that the accused had more than one gallon of spirituous liquor for the purpose of sale in violation of the statute and arranged with the owner of an empty stable to place his trunk therein; that two trunks were hauled from the railroad depot there by a drayman hired by a third person, and one of these trunks were found by the police in the stable about dusk of the same day to contain thirty-six quarts of whiskey, and there was no explanation or evidence by the accused, who had disappeared at the time of the seizure and was afterwards brought back under arrest, is *Held* sufficient to sustain a conviction.

### 2. Same—Accomplice—Principal and Agent.

Where the evidence tends to show that the accused having more than one gallon of spirituous liquor for the purpose of sale had arranged with the owner of an empty stable for placing his trunk there, which was found on the same day to contain thirty-six quarts of whiskey, etc., other testimony that the trunk was hauled there by a drayman employed by a third person permits the inference by the jury that such third person acted either as the agent of or in collusion with the accused.

### 3. Spirituous Liquors—Possession—Instructions.

Where the evidence tends to show that the defendant had more than one gallon of whiskey in his possession, an instruction to the jury that the State must show beyond a reasonable doubt the facts of possession, as well as the purpose of unlawful sale, is favorable to the accused, of which he cannot complain.

### 4. Spirituous Liquors—Possession—Denial—Evidence.

Where a search warrant charges the possession of more than one gallon of whiskey, and forty-eight quarts are found, with evidence to show that it was in the actual or constructive possession of the defendant, it is sufficient for conviction, and the fact that he made no denial is competent evidence for the consideration of the jury.

### 5. Spirituous Liquors—Sentence—Hiring Out—Courts.

Where the defendant is convicted of having more than one gallon of

whiskey in his possession for the purpose of sale, a four-months sentence in jail is not excessive, and the court may give permission to work the prisoner on the public roads.

APPEAL by defendant from *Bond, J.,* at September Term, 1918, of PASQUOTANK.

The defendant was indicted and convicted in the recorder's court for having in his possession sixteen gallons of whiskey for the purposes of sale. On appeal to the Superior Court he was again convicted and appealed.

*Attorney-General Manning, Assistant Attorney-General Nash and J. C. B. Ehringhaus for the State.*
*Aydlett, Simpson & Sawyer for defendant.*

CLARK, C. J. The chief point pressed on the argument here was the refusal of the court to charge that "If the jury believed all the evidence to return a verdict of not guilty." The evidence against the defendant in the record, and as fairly summed up by the trial judge, is that the defendant about 10 a. m. came to the witness, Will Morris, the owner, and in charge of the stable, which was locked and not in use, and asked permission to have a trunk put in there. Morris says that he gave the defendant the key to the stable and soon after that he saw a trunk in the stable and that defendant did not return the key to him. Chief of Police Thomas testified that he went to the stables and found the trunk, and that it had forty-eight quarts of liquor in it. He had a search warrant but he could not find the defendant who left town that night about midnight, and was brought back from New Bern by an officer to whom papers had been sent for his arrest.

Morris, the owner of the stable, further says that the chief of police, Thomas, got the trunk which he saw in the stables; that Bush never came back for the trunk and never returned the key; that Bush in talking to him may have said that he would have two trunks to put in there. He says that he saw the trunk sitting in there between 10 and 2 o'clock, and there was no other trunk there that day; that the door was open and that the defendant was in the habit of carrying trunks about with different sets of harness with him which he used for race horse purposes.

The witness Gray, a colored drayman, says that he hauled a trunk that day; that he put it in Mr. Morris' stables; that the trunk was brought to him on a truck; that the truck came from the direction of where the cars were, though he did not see it brought out of the car; that in fact he hauled two trunks at that time, which was about 10 o'clock, and put them in Morris' stables; that he never saw the man

before who got him to haul the trunk out there, but it was not the defendant; that he doesn't know whether the trunks came out of the car or not; that the man who got him to haul the trunks was not the defendant and that the man asked him if he knew where Morris' stables were.

The chief of police further testified that he went to the car and found the horse in there and twelve cases of liquor, and that about dusk he saw this trunk (which was in court) in Morris' stables, and that it had forty-eight quarts of liquor in it; that he arrested a man whose name was Al Bush, who he noticed was dodging him, and used the searchlight on him. He found him in another stable.

It appears that Al Bush was convicted and does not appeal, and presumably the evidence as to him is not in this record.

The case stands therefore upon the above evidence, uncontradicted (for the defendant did not go on the stand or put on any evidence), that the defendant Charles Bush got the key from Morris, the owner of the stables, expressing the wish to put a trunk therein. A trunk was there about midday, and was searched about dusk by the chief of police who found forty-eight quarts of liquor in it. There is no explanation by or for the defendant to whom he gave the key, nor to contradict the presumption that this was his trunk, nor any explanation why when the search warrant was issued for the trunk he was not present, and why he left later that night for New Bern and was brought back by an officer under a capias issued for him in this case.

It is true that the colored drayman says that he hauled two trunks to Morris' stables that day for a man that he did not know, whom he had never seen before and would not recognize at the trial. Whether this "unknown" stranger acted in collusion with the defendant or was the agent of the defendant is a matter of inference, and there was no direct evidence as to this.

There was evidence that two horses were shipped into Elizabeth City that morning and that the car in which they came and from which it seems that the trunk or trunks was taken when searched contained twelve cases of whiskey hidden under the straw, and that the defendant and his father were down at that point that morning before the trunk was hauled to Morris' stables.

The illicit sale of whiskey, or the possession of it for the purposes of sale, is, like the crime of larceny, generally done furtively and direct evidence is not easily had. It is usually an inference to be drawn by the jury from a combination of circumstances. The court told the jury, "If you find that this evidence shows beyond a reasonable doubt that this man had charge of that liquor and had it in his possession for the purpose of selling it to other people, and you find that these two

STATE *v.* BUSH.

facts are shown beyond a reasonable doubt, it would be your duty to return a verdict of guilty." This was too favorable to the defendant, for if the defendant was in actual or constructive possession by having control, the statute makes it evidence of the intent to sell, if there is more than one gallon. Laws 1913, ch. 44, sec. 2.

The court further charged the jury: "The trial of a man is a serious matter, and service upon a jury is one of the most serious responsibilities that a citizen can render. You should review the evidence, talk it over with each other, and then ask yourselves the question: Has it been shown beyond a reasonable doubt in this case that the defendant is guilty? If you say it has, return a verdict of guilty. If you say it has not, then return a verdict of not guilty." The defendant excepted to these two instructions, but we find no error therein of which he can complain.

When twelve impartial jurors, sworn to render a true verdict according to the evidence, have found that there was sufficient evidence to convince them beyond a reasonable doubt that the defendant has committed an act which is usually done by evasion and indirect means, the courts should be and are slow to find that there was no evidence in the case.

This offense is one that is committed from one of the lowest of motives, that of making profit by a violation of the laws of the State, and while the defendant is not called upon to prove himself innocent, we think there was sufficient evidence to create a belief beyond a reasonable doubt of the defendant's guilt, especially when there was no evidence to explain why a trunk placed in Morris' stables by the use of a key which he obtained from Morris for that purpose contained the liquor in question, and his simultaneous disappearance from town when the trunk was searched.

When a man is charged with crime and makes no denial, that of itself is competent evidence to go to the jury. Here the defendant was so charged by the search warrant. He did not come forward and deny that the trunk was his or that the liquor was there without his knowledge, but, on the contrary, left town that night. We do not feel justified in holding that the verdict of the jury, of the twelve good men and true, was based upon no evidence whatever.

The possession of more than one gallon of whiskey justified the jury in finding that the defendant had it for purposes of sale, Laws 1913, ch. 44, sec. 2; Gregory's Supp., 2080b (2); and constructive possession is sufficient, *S. v. Lee,* 164 N. C., 533.

The defendant also excepted because he was sentenced to four months in jail, but this was not excessive (*S. v. Denton,* 164 N. C., 530); and

the permission given by the court to work the defendant on the public· roads was authorized. *S. v. Hicks,* 101 N. C., 747; *S. v. Farrington,* 141 N. C., 844.

No error.