STATE v. JOE BALDWIN.

(Filed 8 October, 1919.)

1. **Spirituous Liquor—Possession—Evidence—Appeal and Error—Harmless Error.**

    Where the evidence of defendant's possession of spirituous liquors is sufficient to make out a *prima facie* case that it was for the purpose of sale, testimony of those who were found on the premises at the time of the search, in reply to the officer's questions, as to why and for what purposes they were there, that they knew nothing of the liquor, and were only stopping en route to another place to have their automobile repaired, as it appeared to be harmless, if erroneous, and of it the defendant cannot complain, certainly if he afterwards derived a benefit therefrom.

2. **Spirituous Liquors—Possession—Evidence—Nonsuit.**

    Testimony of the officers making the search of the premises of defendant, who was indicted for having in his possession spirituous liquor for the purpose of sale in violation of the statute, that certain sufficient quantities thereof were found in different places thereon, in jugs and kegs, etc.; that corks, bottle-wrappers, and a suitable glass for retailing it were found, together with a keg having a lock faucet, the key of which was in defendant's possession; and of the conduct of the defendant, etc., is *Held*, in this case, competent to show the unlawful intent of the defendant to sell, and his unlawful purpose in having the liquor on his premises, and the defendant's motion as of nonsuit was properly denied.

3. **Instructions—Prayers for Instruction—General Charge—Trials.**

    The refusal of the prayers for instruction aptly tendered by appellant is no ground of error on appeal if such have been substantially covered by the judge, in his charge to the jury, in his own language.

4. **Instructions—Appeal and Error—Error Cured.**

    Where the defendant is tried under the statute which makes the possession of more than one gallon of spirituous liquor evidence that it was for the purpose of sale, and the trial judge has erroneously instructed the jury that the law "presumed" from the bare fact of such possession an intent or purpose to sell, this error is cured when he immediately corrects it by charging the correct rule as to the *prima facie* case, presumption of innocence, reasonable doubt, and burden of proof, so that the jury were not mislead. *S. v. Bean*, 175 N. C., 748, and other like cases, approved.

5. **Trials—Instructions—Contentions—Statement by Solicitor—Exceptions—Appeal and Error.**

    Exception taken after verdict to the restatement by the solicitor, in a criminal case, of his contentions, allowed by the court while the court was

recapitulating the contentions on both sides, is too late; for if the solicitor had misstated them, the attention of the judge should have been called to it at the time.

**6. Spirituous Liquor—Possession—Evidence—Principal and Agent.**

With the other evidence in this case as to the defendant having sufficient spirituous liquor in his possession and on his premises to make a *prima facie* case under statute of the unlawful purpose of sale, testimony of the acts of his brother in carrying such liquor from an automobile to defendant's premises, under the surrounding circumstances, is held to be competent as to his agency for the defendant in so doing.

INDICTMENT, tried before *Allen, J.,* and a jury, at March Term, 1919, of WAKE.

Defendant was tried under an indictment containing four counts for:

1. Having sold whiskey to parties unknown.

2. Having whiskey in his possession for the purpose of sale.

3. Having received more than one quart in one package at one time.

4. Having received more than a quart within fifteen days.

There was a verdict of guilty, and from the judgment upon such conviction, the defendant appealed to this Court. The judge, however, confined the jury's consideration to whether defendant had intoxicating liquors in his possession for the purpose of sale.

There was testimony which tended to show that three officers of Wake County, Raines, Honeycutt, and Broadwell, in consequence of information which they had received, went to Apex on the evening of 18 December, 1918, and about 8 o'clock that evening stationed themselves in a plum thicket near defendant's house, which was situated just outside of the limits of that town by the Seaboard Air Line Railroad. While they were there, an automobile came up, the driver putting out the lights when he was approaching the house, ran up in front of defendant's driveway, which led into his back lot, and stopped. When the officers had arrived within about fifty yards of the car, they could see a man going to and coming from it, the moon at the time shining brightly. They arrested this man as he put down the last jug inside the gate of defendant. The man himself was Hayes Baldwin, a brother of defendant, and there were four jugs, two of two gallons, one of three gallons, and one of one gallon, each jug in a guano sack. One of the officers stated that they contained monkey rum and the other corn whiskey. Officer Raines, sending Broadwell to the front door of defendant's house, went himself to the back door. The house was lighted, and he, going inside, found two white boys and two white women, as well as the wife of Hayes Baldwin, but did not find Joe Baldwin or his wife therein. He found one quart of whiskey outside of the back door on a little shelf. Officer Honeycutt, while Raines was in the house, went to the back door with

STATE *v.* BALDWIN.

Hayes Baldwin in charge, and while there a little negro boy ran out. This attracted his attention, and, while watching the boy, Hayes made his escape. He found in the yard a broken-down automobile and a box that had a half-gallon of cork stoppers in it. By the garage was a small chicken-house, and Honeycutt, throwing his searchlight in it, found seven five-gallon kegs of corn whiskey. This they deposited with the four jugs at the gate. After the search, the officers, intending to use the automobile in which Hayes Baldwin had driven up to carry the liquor which they had found, were engaged in putting the liquor in the machine, when Hayes Baldwin, suddenly appearing, locked the machine so that they could not use it, and again made his escape. It seems that the white people in Joe Baldwin's house were residents of the town of Wilson, and were on their way home when they stopped there. The white man claimed that his machine had broken down, and that they stopped for the purpose of having it repaired. The officers, however, used his machine in carrying the liquor to Apex. The defendant was arrested on Friday afternoon, 20 December, about seventy-five yards from his home. He was left in the custody of the local deputy, Wall, on that occasion, and while the other officers went to search another house he made his escape. On the afternoon of the 20th they found, on defendant's premises, two five-gallon kegs of wine, one of which was set up in a corner of his garage with two glasses near it. This had a faucet, which could be used only with a key. In this garage, too, they found a large number of wrappers for bottles, "the kind that are usually seen around them." They were pasteboards in the shape of pint bottles.

The officer, Roy Honeycutt, testified as to the search on 20 December, as follows:

"I found a five-gallon jug about half full of scuppernong wine, and a fifteen-gallon keg of bullis wine, which was on the shelf in the garage, and a glass the size of that; one of them had a faucet that you could lock, and the lock was in the possession of Joe's wife, and that was put up there from the time we went there Wednesday night until Friday."

Defendant objected to this evidence, but it was admitted. This was defendant's second exception. His first exception was to the refusal of the court to permit an officer, who was a witness, to answer a question asked him on the cross-examination: "Did Mr. Harrison, the white man, tell you why he was at Joe Baldwin's house?" But testimony to this effect was afterwards admitted, without objection, and this is what they said to officer Honeycutt: "I had a conversation with the people in the house after I found the whiskey. They didn't want to give me their names; I asked them two or three times. The older lady said her name was Mrs. Lambe, and the gentleman said he was Mr. Harrison, and the other lady his wife; they told us the automobile was broken down, but

it was the same automobile that was in the back yard, and it was the one they took us down to Apex in. They said their car was broken down there, and that they didn't know what kind of a house it was; they said they had not seen any whiskey and would not have stopped there if they had known there was whiskey there."

Defendant's third exception was taken to the court's refusal to give judgment as of nonsuit upon the evidence.

The remaining exceptions of the defendant were directed to the judge's charge, or to his refusal to charge as specially requested.

. Exception four is founded upon the following state of facts: The judge had stated fully the contentions of the State upon the evidence, and had followed this by a statement of the contentions of the defendant. The court, at this point, permitted the solicitor to make a statement of his contentions, as to the condition of the garage, but refused to embrace them in his charge. The court then stating that it allowed the defendant the same privilege, that is, to state his contentions, as to the condition of the garage.

*Attorney-General Manning and Assistant Attorney-General Nash for the State.*

*Armistead Jones & Son and Percy J. Olive for defendant.*

WALKER, J., after stating the case as above: We have not stated all of the evidence tending to show defendant's guilt, but only so much as is necessary to a proper consideration of the exceptions taken at the trial. There was ample testimony to prove that defendant had liquor in his possession for the purpose of sale.

The testimony to which the defendant objected, and which was admitted, was competent to show how the search of the defendant's premises was made and what was discovered. It laid the foundation for further proof that the liquor was on his premises with his knowledge and consent, and that some of it was placed there by him or at his request. The discoveries tended to show preparation for the sale of liquor. The conduct of the defendant, when he returned to his home, was not that of an innocent man.

The first exception taken to the testimony as to what was said to the officer by some of the parties found at defendant's house, about their being there, and why they were there, is without merit, because if the evidence was competent of itself, the defendant got the full benefit of it afterwards. The error, if any, was harmless, at least so far as the defendant was concerned.

The second exception is equally without any merit. It was competent and relevant to show what was found on the defendant's premises, in the

garage and the chicken coop, and the condition of those places. It aroused a grave suspicion of retailing liquor, and gave rise to even more than a suspicion, as it tended strongly to prove an actual sale of liquor. Seven five-gallon kegs of corn whiskey or "monkey rum" in the chicken coop, a half gallon of cork stoppers, a fifteen-gallon keg of bullis wine, a five-gallon jug of scuppernong wine, a glass about the proper size, the bottle wrappers, the locked faucet, with the key in the possession of defendant's wife, and the defendant's behavior when he came back to his home, form an array of circumstances which cannot be denied any potency as evidence of guilt. The condition of the premises, as described by the witnesses, was competent to show the intent and purpose of the defendant in having the liquor.

The refusal to nonsuit was correct. This follows from what we have already, and circumstantially, said about the evidence and its sufficiency. *S. v. Atwood,* 166 N. C., 438; *S. v. Turner,* 171 N. C., 803; *S. v. Dobbins,* 149 N. C., 465; *S. v. Blauntea,* 170 N. C., 749; *S. v. Boynton,* 155 N. C., 456; *S. v. Bush,* 177 N. C., 551. The evidence we have here consists of "pregnant circumstances," as said in *S. v. Turner, supra.* It is the cumulation of facts that makes it all fit for the consideration of the jury, and not any single fact. The evidence in this case is stronger than was that in *S. v. Jones,* 175 N. C., 709, and *S. v. Horner,* 174 N. C., 788, where we sustained the convictions for distilling liquor.

The charge of the court was all that the defendant could ask for. It covered the points in controversy, and, when read altogether, was a correct statement of the law bearing upon the case, and the defendant had the full benefit of the instructions requested by him so far as he was entitled to them. It was not required that the judge should adopt the language of the requests. *Graves v. Jackson,* 150 N. C., 383; *Rencher v. Wynne,* 86 N. C., 269.

The judge fell into error when he stated that the law *presumed* an intent, or a purpose, to sell from the bare fact of possession of more than a quart, but he promptly, and even immediately, corrected the error and gave the proper instruction, in accordance with *S. v. Barrett,* 138 N. C., 630; *S. v. Wilkerson,* 164 N. C., 432, and *S. v. Bean,* 175 N. C., 748. The error was sufficiently retracted, and the correct rule given as to the *prima facie* case, presumption of innocence, reasonable doubt, and burden of proof. It also appears that defendant himself led the court into the error as to the presumption by one of his own requests for instructions (No. 11).

There was no error in permitting the solicitor to restate his contentions while the court was recapitulating them on both sides. If the contentions were misstated, the judge's attention should have been called to it, so that the proper correction could then be made; otherwise, it is

too late after verdict to complain. *Bradley v. Mfg. Co.,* 177 N. C., 153.

The doctrine of actual and constructive possession was properly explained to the jury, in respect to its bearing upon the facts of this case, as it is stated in *S. v. Lee,* 164 N. C., 533, and *S. v. Bush,* 177 N. C., 551. There was evidence from which the jury could rightly infer that Hayes Baldwin was acting for defendant in bringing liquor to his premises for the purpose of sale, and also that the defendant was at times actually at his home and engaged in the sale of liquor from a stock, and a large one, which he kept on hand for sale, and at other times was constructively in possession of the premises and liquor for the same illegal purpose.

The trial was free from error, so far as we can see.

No error.