STATE OF NORTH CAROLINA v. WILLIE FOSTER, JR.

No. 45

(Filed 12 December 1973)

1. Burglary and Unlawful Breakings § 8; Constitutional Law § 36—
maximum statutory sentence — no cruel and unusual punishment

A sentence of imprisonment which is within the maximum authorized by statute is not cruel or unusual in a constitutional sense, unless
the punishment provisions of the statute itself are unconstitutional.

2. Criminal Law §§ 43, 60— fingerprints — photograph and opinion testimony admissible

The trial court in a first degree burglary case did not err in
admitting into evidence photographs which were properly authenticated as to accuracy and properly identified as enlargements of fingerprints lifted from flowerpots at the crime scene, nor did it err in
allowing a police officer to testify as to his comparison of defendant's
known fingerprint with the latent print and to give his opinion that
the prints were made by the same finger.

3. Criminal Law §§ 43, 60— fingerprint photograph — use by second expert witness — competency of testimony

Where photographs of fingerprints had already been authenticated
as to their accuracy and had already been introduced into evidence
and used by another fingerprint expert to illustrate his testimony,
testimony of a second fingerprint expert referring to the photographs
was competent and did not constitute an improper use of the photographs.

4. Criminal Law §§ 43, 60— fingerprint photograph — admissible as substantive evidence

A photograph of fingerprints, when shown by extrinsic evidence
accurately to represent, depict or portray the print it purports to
show, is admissible as substantive evidence.

5. Criminal Law §§ 60, 169— evidence of fingerprint card in master police
file — harmless error

Though the trial court erred in allowing into evidence testimony
concerning a fingerprint card allegedly bearing the print of defendant
in the master file at the police department where no foundation had
been laid by evidence that the fingerprint on the master file card
was in fact a fingerprint of this defendant, the error was harmless
beyond a reasonable doubt.

6. Criminal Law § 86— cross-examination of defendant — inquiry as to
other offenses committed

The trial court did not err in permitting the State to ask defendant on cross-examination for impeachment purposes whether he had
committed other named criminal offenses unrelated to the case under
consideration and for which he had not been tried or convicted.

**7. Criminal Law § 128— cross-examination — motion for mistrial — denial proper**

The trial court in a first degree burglary case did not abuse its discretion in denying defendant's motion for a mistrial where defendant contended that an unfinished question asked him during cross-examination but abandoned after a discussion in the absence of the jury deprived him of a fair trial.

**8. Criminal Law § 93— order of proof — discretionary matter**

The admission in a criminal prosecution of evidence as a part of rebuttal, when such evidence would have been properly admissible in chief, rests in the sound discretion of the trial judge and will not be interfered with in the absence of gross abuse of that discretion.

**9. Criminal Law § 111— error in instructions — immediate correction sufficient**

Defendant was not prejudiced where the trial court instructed the jury to disregard an inadvertent statement previously made and then proceeded to charge the jury correctly, since the inadvertence was discovered immediately and the correction was prompt and complete.

**10. Burglary and Unlawful Breakings § 7— first degree burglary — submission of lesser degrees of crime — harmless error**

Error of the trial court in a first degree burglary case in submitting the lesser included offenses of felonious and non-felonious breaking or entering was in defendant's favor, and the charge on those offenses, in view of the verdict of guilty of first degree burglary, was immaterial.

**11. Burglary and Unlawful Breakings § 5— first degree burglary — fingerprint evidence — sufficiency of evidence**

Evidence was sufficient to be submitted to the jury in a first degree burglary case where it tended to show that a fingerprint lifted from a flowerpot in the victim's home was in fact a print of defendant's right index finger, that the print of defendant's right index finger was placed on the flowerpot by defendant on the occasion referred to in the indictment, and that defendant was present when the crime charged in the indictment was committed, and at least participated in its commission.

Chief Justice BOBBITT dissenting.

Justice SHARP joins in the dissenting opinion.

APPEAL by defendant from judgment of *Chess, S.J.,* 19 February 1973 Schedule "D" Conflict Criminal Session, MECKLENBURG Superior Court.

Defendant is charged in a bill of indictment, proper in form, with burglary in the first degree of the dwelling house of James Harley Davis located at 3422 Kentucky Avenue in

Charlotte. He was first tried for this offense at the 1 May 1972 Schedule "C" Regular Criminal Session of Mecklenburg Superior Court, convicted by the jury, and sentenced to life imprisonment. On appeal we awarded a new trial due to erroneous admission of hearsay evidence. See 282 N.C. 189, 192 S.E. 2d 320 (1972).

Evidence offered by the State tends to show the facts narrated below.

On 5 September 1971 James Harley Davis, his wife Rosa Mae Davis, their twelve-year-old daughter and ten-year-old son were at home in their dwelling at 3422 Kentucky Avenue. The house had five rooms consisting of three bedrooms, a living room and a kitchen. On Saturday night, 4 September 1972, Mr. Davis and his son went to bed about 9:00 or 9:30 p.m. in the daughter's bedroom. Mrs. Davis and the daughter slept in the front bedroom and went to sleep about 12 midnight. The bathroom was between and accessible from the front bedroom in which Mrs. Davis was sleeping and the back bedroom in which Mr. Davis was sleeping. The third bedroom in which the son normally slept was unoccupied that night due to a fresh paint job. The windows in the son's bedroom were left open so the odor of the paint might escape. The screens were in place and were latched by hooks.

Mrs. Davis awoke at approximately 1:50 a.m. A man was leaning over her beside the bed with his hands on her arms and leg. He was wearing a dark jacket with two white stripes down the sleeves and had a mask or stocking over his head. She called her husband several times, and each time the man would say, "sh-sh-sh." When the man stood up and turned her loose, she sat up in bed and screamed. He struck her in the face and ran toward the living room. He stopped, turned around, heard Mr. Davis coming through the bathroom, and ran out toward the kitchen. Mr. Davis, awakened by his wife's screams, searched for the intruder without success.

The police were called. Investigation revealed that the screen in the son's bedroom, which was in place and fastened when the family retired for the night, had been removed. Mr. Davis's pants and shirt were found in the son's bedroom, his empty wallet on the bed and his money gone. A television set and record player located in the corner of the living room were missing. Plastic flowerpots on stands approximately two and

State v. Foster

one-half feet tall, one on each side of the television, had been moved from their regular location toward the center of the living room. Mrs. Davis had owned these two flowerpots about three years and had planted flowers in them many times. "I would change them and plant more flowers. I would wash the pots, loosen the dirt and put fresh dirt in. I kept the pots in the living room and they always stayed indoors."

There was evidence that neither Mrs. Davis nor her husband had known on seen defendant prior to 5 September 1971; that defendant had never been inside the Davis home; and that defendant had no permission "to come into or carry my television set or stereo or anything out of my home." None of the missing property has ever been recovered.

Officers Cobb and Adams of the Charlotte Police Department arrived at the Davis residence at approximately 2:45 a.m. on the morning of 5 September 1971. Cobb was trained and experienced in dusting for fingerprints and had with him the necessary equipment for lifting latent prints. After speaking with the patrol officers who were already there handling the preliminary investigation, Cobb and Adams entered the house and Cobb dusted for fingerprints around an open window in the son's bedroom but was unable to take any prints from that area. In the living room Cobb dusted two plastic flowerpots and lifted three latent fingerprints from one of them. The lifts were made by placing a clear plastic Scotch tape over the prints which showed up in the dust. The three prints thus lifted from the flowerpot were put on a three by five white index card. Officer Cobb handed this card to Officer Adams who made certain identifying notations thereon, *viz*: the complainant's name and address, the complaint number of this case, the offense, date, and his signature as technician. Adams put the card in a five by seven envelope and placed it in the "Crime Lab" at the Charlotte Police Department for the attention of Officer Stubbs. Later, Officer Adams got the card back from Officer Stubbs and used a fingerprint camera to photograph one latent print on the card designated by Officer Stubbs for enlargement purposes. The photograph thus taken was enlarged and given to Officer Stubbs.

Officer Stubbs is a fingerprint expert. Upon receiving from Officer Adams the latent lift from the flowerpot in the Davis home, he searched the master fingerprint file maintained in his

office to see if the latent print could be identified from any print in the master file. Based on leads thus obtained, defendant Willie Foster, Jr., was arrested and fingerprinted on 22 October 1971 in the booking office of the county jail by Preston Pendergrass, Jr., one of the Breathalyzer officers. In order to eliminate the necessity for Pendergrass to appear as a witness in this case, Officer Stubbs personally fingerprinted defendant on 12 November 1971, and a card bearing these fingerprints is State's Exhibit 2. An enlargement of defendant's right index fingerprint, as same appears on State's Exhibit 2, is reproduced on the left hand side of State's Exhibit 1.

The right hand side of State's Exhibit 1 purports to be an eight by ten enlargement of the photograph Officer Adams made of the latent print lifted from the flowerpot and given to Officer Stubbs. This "blowup" is the focal point of controversy in this case. The three by five card on which Officer Adams placed the latent print lifted from the flowerpot has been misplaced or lost from the clerk's office and was not available at this, the second, trial for visual comparison with the "blowup." The folder to which the "blowup" is attached has on it the words "latent print." No identifying data on the lost three by five card appears *in* this photograph of the one identifiable print placed on the card. However, written *on* the bottom right corner of the photograph is the number 71-77794. Officer Stubbs testified that "when I received the enlargements of the latent, in the lower right-hand corner I put in ink the complaint number that this print was involved with." Other testimony disclosed that the five by seven manila envelope, from which Officer Stubbs took the latent print card, had written on it "the name of the complainant, the address and complaint number which has been assigned to this particular case." Examination of the five by seven manila envelope, State's Exhibit 3, discloses the following words and numbers written across the top:

| HB & L | James H. Davis | 5 Sept 71 |
|--------|----------------|-----------|
| 1st degree | 3422 Kentucky | |
| | 71-77794 | |

Defendant objected to the blowup photograph, contending it has not been established that said enlargement is a blowup of the latent lift taken from the flowerpot and placed on the now lost three by five card.

On voir dire in the absence of the jury, Officer Stubbs testified that the blowup photograph on the right hand side of State's Exhibit 1 under the lettering "latent print" fairly and accurately represents "a blowup photograph of the one identifiable print" he had observed on a three by five index card contained in an envelope in the "Crime Lab" marked for his attention: that it is "a blowup photograph of the identifiable print on the three by five card which on the front contained the notation, 'James Harley Davis' and '3422 Kentucky Avenue' and 'September 5, 1971.'" Based thereon, the court overruled defendant's objection, recalled the jury, and admitted in evidence State's Exhibit 1, State's Exhibit 2, and State's Exhibit 3. Then, over defendant's objection, Officer Stubbs testified that on the left of State's Exhibit 1 "is an enlargement of a known or inked fingerprint. On the right is an enlargement of what we call the latent or crime scene print. The comparisons between these two prints are made by what we call points of identification or characteristics." Officer Stubbs then pointed out thirteen characteristics which are identical in nature and in the same general places on the inked print and on the latent print. Based on his examination of the two prints, Officer Stubbs testified that in his opinion both were made by the same finger.

On cross-examination Officer Stubbs said he did not know of his own personal knowledge "where the latent lift on a three by five card to which I have testified came from."

The evidence for defendant is narrated below.

Hazeline Foster, wife of defendant, testified that on the evening of Saturday, 4 September 1971, and throughout that night, defendant was home in bed; that the family did not own a television set before that date and her husband did not bring home a television on or about that date; that she did the washing for the family and her husband did not own a dark jacket with white stripes down the sleeves and did not own a ski mask.

Willie Foster, Jr., testifying in his own behalf, said he was thirty-four years of age and lived at 532 Center Street, Apartment 3, with his wife and son; that he had lived in Charlotte about twenty-five years; that he has always had more work than he could do including caddying for several years at the country club and working for a number of named individuals, particularly the Triple-A Heating Company; that he lives about a block and a half from Kentucky Avenue but has never been in

the Davis home; that he has never owned any type of ski mask or any type of dark jacket with white stripes down the side; that he did not have a television set in his home on 5 September 1971; and that he has been in jail for fourteen months on the present charge. He emphatically denied that he had ever been on the Davis premises or touched any flowerpots. He admitted he had been fingerprinted but denied the commission of any criminal acts in the past.

Mrs. Henry Wilson testified that defendant had done yard work and heavy indoor work in and around her home for two or three years prior to October 1971; that she had left him alone in her house on many occasions and knows other people who regard defendant as an honest and conscientious worker; that his general reputation in the community is excellent.

By way of rebuttal, the State examined Lawrence A. Kelly, Identification Technician in the sheriff's office. Mr. Kelly testified that he has worked in the identification of fingerprints for fifty years; that he was with the 27th C.I.D. Crime Lab in Europe for four years and nine months dealing with the identification of fingerprints of displaced persons; that he was with the Durham Police Department, the City-County Bureau of Identification in Fayetteville, and the Mecklenburg County Police Department for twenty years; that he has attended many seminars given by the F.B.I. during the past forty years dealing with the identification of fingerprints.

Over objection, Mr. Kelly testified that defendant's counsel hired and paid him to examine the two blowup photographs on State's Exhibit 1 and make a comparison between them; that he did so in November 1971; that in his opinion the print on the left and the print on the right were made by one and the same person.

At the close of all the evidence defendant renewed his motions previously made to exclude State's Exhibit 1 and to strike all testimony relative thereto, and again moved for judgment of nonsuit. These motions were denied. The jury returned a verdict of guilty of burglary in the first degree as charged in the bill of indictment and defendant was sentenced to life imprisonment. He appealed to the Supreme Court assigning errors discussed in the opinion.

*Robert Morgan, Attorney General; William M. Melvin and William B. Ray, Assistant Attorneys General, for the State of North Carolina.*

*Eugene C. Hicks III and Tate K. Sterrett of Hicks & Harris, attorneys for defendant appellant.*

HUSKINS, Justice.

Upon the call of this case for trial defendant moved to dismiss it and seven other criminal cases pending against him on the ground that the State had failed to provide him a speedy trial. Denial of the motion constitutes his first assignment of error.

We note from defendant's brief that he has abandoned this assignment insofar as it pertains to the case before us but continues to assert the right to have seven other criminal cases pending against him dismissed under G.S. 15-10.

It suffices to say that defendant may not, in this action, assert motions pertaining to other cases. The question whether defendant has been denied a speedy trial should be raised in the case to which it pertains and a hearing conducted to determine the matter. This is neither the time nor the place to debate or decide questions arising in cases not now before us. Defendant's first assignment of error is overruled.

Defendant's second and third assignments of error are based on denial of his motions to quash the bill of indictment and in arrest of judgment. He asserts that G.S. 14-52, authorizing the death penalty or life imprisonment as the punishment for burglary in the first degree, violates the cruel and unusual punishment prohibition of the Eighth Amendment to the Federal Constitution and Article I, sections 19 and 27, of the Constitution of North Carolina.

[1] We have consistently held that a sentence of imprisonment which is within the maximum authorized by statute is not cruel or unusual in a constitutional sense, unless the punishment provisions of the statute itself are unconstitutional. *State v. Mitchell,* 283 N.C. 462, 196 S.E. 2d 736 (1973) ; *State v. Cradle,* 281 N.C. 198, 188 S.E. 2d 296 (1972) ; *State v. Hilton,* 271 N.C. 456, 156 S.E. 2d 833 (1967). The federal rule is to like effect. *Martin v. United States,* 317 F. 2d 753 (9th Cir. 1963). First degree burglary committed prior to 18 January 1973 is punish-

able by life imprisonment. *State v. Waddell*, 282 N.C. 431, 194 S.E. 2d 19 (1973) ; *State v. Davis*, 282 N.C. 107, 191 S.E. 2d 664 (1972) ; *Furman v. Georgia*, 408 U.S. 238, 33 L.Ed. 2d 346, 92 S.Ct. 2726 (1972). Thus the judgment pronounced is within the maximum authorized by law. The constitutional question raised by these assignments has already been the subject of conclusive judicial determination. Defendant's second and third assignments have no merit and are overruled.

Defendant's sixth assignment of error is abandoned under Rule 28, Rules of Practice in the Supreme Court.

[2]    Defendant assigns as error the admission over objection of testimony of Officer Stubbs relative to comparison of defendant's fingerprint with the latent print and his opinion based thereon and the admission into evidence of State's Exhibit 1, on the ground that since the three by five index card containing latent prints taken from the Davis home was lost and not produced at the trial, the State could not establish that the latent print examined by Officer Stubbs and photographed by Officer Adams was, in fact, the latent print lifted from the flowerpot in the Davis home. Hence he contends that the State has failed to establish that the photographs on both sides of the folder marked State's Exhibit 1 were in fact the photographs made by Officer Adams.

The State offered evidence which tends to show: (1) Officer Cobb obtained three latent fingerprint lifts from the flowerpot in the Davis home, placed them on a three by five white card, and handed the card to Officer Adams at the Davis home; (2) Officer Adams indicated on the card the complainant's name, address, the offense, the date, complaint number of the case, and the technician's signature; (3) the card was inserted in a five by seven envelope and placed in Officer Stubbs' file box in the crime laboratory under lock and key; (4) Officer Stubbs received the envelope containing the three by five index card with the latent prints on it, examined the latent prints, and later returned it to Officer Adams for photographic enlargement; (5) Officer Adams photographed the one identifiable latent print designated by Officer Stubbs, using a fingerprint camera for enlargement purposes; (6) the photographic enlargement of the latent print was returned to Officer Stubbs who wrote in ink the complaint number "71-77794" in the lower right hand corner of said enlargement; and (7) that the enlargement of the latent print shows the number 71-77794 in

the lower right hand corner and is the photograph which appears on the right side of the folder marked State's Exhibit No. 1. This chain of possession establishes unmistakably that the enlarged photograph on the right side of State's Exhibit 1 is a blowup of the one identifiable latent print lifted by Officer Cobb from the flowerpot in the Davis home.

Officer Stubbs testified without objection that he personally fingerprinted the defendant on 12 November 1971. The fingerprints thus obtained were placed on State's Exhibit 2 and delivered to Officer Adams. Without objection, Officer Adams testified that he photographed the print of defendant's right index finger as it appeared on State's Exhibit 2, made an eight by ten enlargement thereof, and that that enlargement is the photograph on the left side of State's Exhibit 1. This evidence establishes unmistakably that the enlarged photograph on the left side of the folder marked State's Exhibit 1 is the photograph of defendant's right index fingerprint which was personally inked by Officer Stubbs on 12 November 1971.

Then, using the photographs which constitute State's Exhibit 1 to illustrate his testimony, Officer Stubbs testified over objection that the photograph on the left side of State's Exhibit 1 fairly and accurately depicts a blowup of defendant's right index finger and the photograph on the right side of the folder marked State's Exhibit 1 fairly and accurately depicts a blowup of the one identifiable latent print on the three by five index card which he received in the five by seven envelope, State's Exhibit 3. Officer Stubbs then testified as follows:

"Ladies and gentlemen, on the left of this folder is an enlargement of a known or inked fingerprint. On the right is an enlargement of what we call the latent or crime scene print. The comparisons between these two prints are made by what we call points of identification or characteristics. These are when we can find the identical characteristics on both prints. Some of these types of characteristics are called ridge endings. This is where these friction or capillary ridges of the fingers create the fingerprint pattern ridge. A ridge ending will come to an abrupt end. There are other characteristics like bifurcation. This is when two ridges are running along parallel and just run together to form one ridge. The bifurcations can either run clockwise or counterclockwise. There are also ridge dots. This is just a very short ridge in itself, usually between two of the longer

friction ridges. There are also islands in these friction ridges in many instances where one ridge will be running along and then fork out to make a small dot or island; but it is from the comparisons of these identical characteristics on two prints that we can ascertain that one print is identical with another. In this particular case, I have marked off thirteen characteristics which are identical in nature and in the same general places as on the latent print. . . . [A]s I said, there are thirteen marked off on this particular print. However, there are many more on here that I did not mark off, but I have convinced myself that these were made by the same finger."

We hold that State's Exhibit 1 was properly admitted. Decisions of this Court since *Honeycutt v. Brick Co.*, 196 N.C. 556, 146 S.E. 227 (1929), adhere to the rule that in the trial of cases, civil or criminal, photographs may not be admitted as substantive evidence but, where there is evidence of the accuracy of a photograph, a witness may use it for the restricted purpose of explaining or illustrating his testimony relative and material to some matter in controversy. Stansbury's North Carolina Evidence § 34 (Brandis rev. 1973); *State v. Tew*, 234 N.C. 612, 68 S.E. 2d 291 (1951). Accuracy is established where, as here, it is shown by extrinsic evidence that the photograph is a true representation of the scene, object or person it purports to portray. *State v. Tew, supra; State v. Rogers*, 233 N.C. 390, 64 S.E. 2d 572 (1951); *Spivey v. Newman*, 232 N.C. 281, 59 S.E. 2d 844 (1950); *State v. Matthews*, 191 N.C. 378, 131 S.E. 743 (1926); 3 Wigmore on Evidence § 793 (Chadbourn rev. 1970).

It should be noted that these photographs were admitted over defendant's general objection and there was no request that their use be limited or restricted. When a general objection is interposed and overruled, "it will not be considered reversible error if the evidence is competent for any purpose." *State v. Casper*, 256 N.C. 99, 122 S.E. 2d 805 (1961); *State v. Cade*, 215 N.C. 393, 2 S.E. 2d 7 (1939); Rule 21, Rules of Practice in the Supreme Court.

Since the photographs contained in State's Exhibit 1 had been properly authenticated as to accuracy and properly identified as enlargements of the fingerprints they purport to portray, the testimony of Officer Stubbs relative to comparison of defendant's known fingerprint with the latent print and

his opinion based thereon was properly admitted. Defendant's seventh and ninth assignments of error are without merit and therefore overruled.

[3]  Lawrence A. Kelly, a fingerprint expert, testified over objection that defendant's counsel hired and paid him to examine the two enlarged photographs on State's Exhibit 1 and make a comparison of the two fingerprints shown thereon; that he did so in November 1971 and in his opinion the fingerprints shown in the two photographs were made by one and the same person. Defendant argues that the court permitted the witness Kelly to use the photographs in State's Exhibit 1 as substantive evidence, thus rendering his testimony incompetent. He contends that a witness cannot offer substantive testimony "based solely on photographs, when the photographs themselves cannot be used as substantive evidence." The admission of this testimony over objection and denial of defendant's motion to strike it constitutes defendant's fifteenth and sixteenth assignments of error.

Whether Kelly's testimony here is prohibited by the rule that photographs may be used for illustrative purposes only, and not as substantive evidence, is open to question. Since the photographs were at least competent for illustrative purposes and were admitted over defendant's general objection and there was no request that their use be limited or restricted, they were properly in evidence and may be regarded as generally admitted for all purposes. *State v. Casper, supra; State v. Cade, supra.* Moreover, for an expert witness to say that he has compared two photographs and in his opinion they depict a fingerprint made by the same finger is arguably not equivalent to use of the photographs as substantive evidence. Kelly is a fingerprint expert. By reason of his superior learning, knowledge and skill in the field of identification by fingerprints, he is better qualified than the jury to form an opinion as to whether the two fingerprints shown in the enlarged photographs in State's Exhibit 1 were made by the same finger. He was asked to express his expert opinion concerning the similarity or dissimilarity of photographs which had already been authenticated as to their accuracy and which had already been introduced in evidence and used by Officer Stubbs, another fingerprint expert, to illustrate his testimony. In this factual setting, Kelly's testimony was competent and no improper use of the photographs has been shown.

But if Kelly's use of the photographs as here depicted requires them to be characterized as substantive evidence, so be it. North Carolina's "illustrative" rule of evidence as applied to photographs has been criticized and long regarded as erroneous by numerous commentators. Dean Henry Brandis comments as follows in Stansbury's North Carolina Evidence § 34 (Brandis rev. 1973):

> "The North Carolina rule is that material of this sort is not substantive evidence and may be used only to illustrate or explain the testimony of a witness. Like the original author of this text, the present author confesses his inability to grasp the significance of this distinction. . . ."

McCormick on Evidence § 214 (2d ed. 1972), commenting on the North Carolina rule, says:

> "The foregoing doctrine concerning the basis on which photographs are admitted is clearly a viable one and has undoubtedly served to facilitate the introduction of the general run of photographs. Unfortunately, however, some courts have tended to carry the implications of the theory to unwonted lengths, admitting photographs as 'illustrative' evidence but denying them 'substantive' effect. It is believed that this distinction is essentially groundless, and fails to warrant the practical consequences which are sometimes seen to flow from it."

McKelvey on Evidence § 381 (5th ed. 1944) says:

> "Photographs as silent witnesses have come increasingly into use in the Courts for the purpose of independent proof of their subject matter. Their character, as a means of putting before the jury original evidence, is quite different from that of illustrative evidence. Instead of explaining to the jury the testimony of a witness, they picture original evidence which reaches the jury through no human witness. If shown to be competent and if their story is material they tell it themselves as silent witnesses of what they portray. Such evidence has its own independent probative value."

The "silent witness" theory as to the use of photographs is recognized with approval in 3 Wigmore on Evidence § 790 (Chadbourn rev. 1970) in the following language:

> "Given an adequate foundation assuring the accuracy of the process producing it, the photograph should then be

received as a so-called silent witness or as a witness which 'speaks for itself.' "

In 2 C. Scott, Photographic Evidence § 1022 (2d ed. 1969), the North Carolina rule is criticized in the, following language:

"Photographic evidence is admissible when it assists a witness in illustrating or explaining his testimony. This test . . . is probably the poorest reason for the use of photographs in that, considered by itself, it fails to recognize their independent probative value."

The theory of admitting photographs as "silent witnesses" is not new to North Carolina jurisprudence. Chief Justice Clark, dissenting in *Hampton v. Railroad,* 120 N.C. 534, 27 S.E. 96 (1897), urged adoption of a rule which allowed photographs to be used as a substitute for a jury view. This is substantially the same theory as the silent witness theory. 3 Wigmore on Evidence § 790 at 220 n. 4 (Chadbourn rev. 1970). The subsequent history of the doctrine in North Carolina is discussed in detail in Gardner, The Camera Goes to Court, 24 N.C.L. Rev. 233 (1946). Although, as the Gardner comment demonstrates, the silent witness doctrine was seemingly adopted by the majority of this Court in a few cases, *Davis v. Railroad,* 136 N.C. 115, 48 S.E. 591 (1904); *Pickett v. Railroad,* 153 N.C. 148, 69 S.E. 8 (1910); *Bane v. Railroad,* 171 N.C. 328, 88 S.E. 477 (1916), that support was short-lived. In *Honeycutt v. Brick Co.,* 196 N.C. 556, 146 S.E. 227 (1929), the Court held that the admission of photographs as substantive evidence constituted error and reverted to the "illustrative" rule which has been the law in North Carolina until the present time.

Even so, *Honeycutt* has been discredited to some extent by the holding in *State v. Cade,* 215 N.C. 393, 2 S.E. 2d 7 (1939). There, a photograph of the murder victim at the spot where the body was found was admitted in evidence and shown to the jury. Justice Barnhill (later Chief Justice), writing for a unanimous Court in approving such use of the photograph, said: "The evidence merely shows that the photographs were exhibited to the jury and there was no request that their use be limited or restricted."

[4] While we are not prepared, in this case, to repudiate the "illustrative" doctrine with respect to all photographs, we hold that a photograph of *fingerprints,* when shown by extrinsic evidence to accurately represent, depict or portray the print it

purports to show, is admissible as substantive evidence. Our holding in this respect is in accord with the overwhelming majority of courts throughout the nation. See cases cited in 3 Wigmore on Evidence § 792, n. 1 (Chadbourn rev. 1970). Defendant's fifteenth and sixteenth assignments of error are overruled. ·

[5]  Defendant's eighth assignment of error is addressed to the admission over objection of testimony of Officer Stubbs that he identified the latent fingerprint lifted from the flowerpot with an alleged fingerprint of the defendant contained on a fingerprint card of Willie Foster, Jr., in the "master file at the police department." No foundation had been laid by evidence that the fingerprint on the master file card was, in fact, a fingerprint of this defendant.

On a former appeal in this case, *State v. Foster*, 282 N.C. 189, 192 S.E. 2d 320 (1972), when a new trial was awarded, this Court alerted the trial court in the following language: "Upon the present record serious questions arise as to the admission over objection of testimony regarding a master fingerprint card bearing date 1958 and the name 'Willie Foster, Jr.,' . . . in the absence of testimony that the prints on these cards were made by defendant. A discussion of these questions is deemed unnecessary. If they arise at all at the next trial, presumably there will be additional evidence as to when and by whom these prints were taken." For some obscure reason, this red flag was apparently ignored by both the trial judge and the solicitor.

The fingerprint card from the master file was not introduced in evidence. Even so, introduced or not, the testimony concerning it, without evidence as to when and by whom the card was made and that the prints on the card were in fact those of this defendant, violated the hearsay rule and should have been excluded. If defendant's conviction rested upon this evidence, it could not stand. But such is not the case.

Comparison of the latent print lifted from the flowerpot with the fingerprint on the card in the master file apparently furnished the lead resulting in defendant's arrest. Officer Stubbs testified without objection that, following the arrest, he personally fingerprinted the defendant on 12 November 1971. The fingerprints thus obtained were placed on a card identified as State's Exhibit 2 and delivered to Officer Adams. Officer

Adams testified without objection that he photographed the print of defendant's right index finger as it appeared on State's Exhibit 2 and made an eight by ten enlargement thereof, which enlargement is the photograph on the left side of State's Exhibit 1. Defendant's right index fingerprint as shown by this enlarged photograph was then compared with the latent fingerprint lifted from the flowerpot as shown by the photographic enlargement of it; and Officer Stubbs, a fingerprint expert, testified that based on thirteen or more identical characteristics, those prints were made by the same finger. This evidence as to the common origin of defendant's known fingerprint and the latent print lifted from the flowerpot is so overwhelming, and the prejudicial effect of the incompetent testimony concerning the master file fingerprint is so insignificant by comparison, that the incompetent evidence was harmless beyond a reasonable doubt. *Schneble v. Florida,* 405 U.S. 427, 31 L.Ed. 2d 340, 92 S.Ct. 1056 (1972) ; *Chapman v. California,* 386 U.S. 18, 17 L.Ed. 2d 705, 87 S.Ct. 824 (1967) ; *State v. Brinson,* 277 N.C. 286, 177 S.E. 2d 398 (1970). Unless there is a reasonable possibility that the evidence complained of might have contributed to the conviction, its admission constitutes harmless error. *State v. Smith,* 278 N.C. 476, 180 S.E. 2d 7 (1971) ; *State v. Fletcher* and *State v. St. Arnold,* 279 N.C. 85, 181 S.E. 2d 405 (1971). This accords with consistent decisions of this Court that admission of technically incompetent evidence is harmless unless it is made to appear that defendant was prejudiced thereby and that a different result likely would have ensued had the evidence been excluded. *State v. Barbour,* 278 N.C. 449, 180 S.E. 2d 115 (1971) ; *State v. Williams,* 275 N.C. 77, 165 S.E. 2d 481 (1969). We do not think exclusion of the evidence concerning the master file fingerprint could or would have produced a different result. Defendant's eighth assignment of error is overruled.

Defendant's tenth assignment of error is abandoned under Rule 28, Rules of Practice in the Supreme Court.

[6] Over objection the State was permitted to ask defendant on cross-examination for impeachment purposes whether he had committed other named criminal offenses unrelated to the present case and for which he has not been tried or convicted. Exceptions to this line of cross-examination constitute defendant's eleventh and twelfth assignments of error.

When a defendant elects to testify in his own behalf, he surrenders his privilege against self-incrimination and knows he will be subject to impeachment by questions relating to specific acts of criminal and degrading conduct. Such "cross-examination for the purpose of impeachment *is not limited to conviction of crimes. Any act* of the witness which tends to impeach his character may be inquired about or proven by cross-examination." *State v. Simms,* 213 N.C. 590, 197 S.E. 176 (1938) (emphasis added); *State v. Colson,* 194 N.C. 206, 139 S.E. 230 (1927). Recent cases upholding this rule include *State v. Mack,* 282 N.C. 334, 193 S.E. 2d 71 (1972); *State v. Gainey,* 280 N.C. 366, 185 S.E. 2d 874 (1972); *State v. Williams,* 279 N.C. 663, 185 S.E. 2d 174 (1971). Defendant concedes the rule to be as stated but requests the Court to re-examine and repudiate it. The rule is necessary to enable the State to sift the witness and impeach, if it can, the credibility of a defendant's self-serving testimony. We therefore adhere to our prior decisions. These assignments are overruled.

[7]  Defendant assigns as error the following exchange which occurred during cross-examination of defendant:

"Q. One more question, Mr. Foster.

A. Yes, sir.

Q. Let me ask you if you didn't hire your own expert witness to examine . . .

MR. HICKS: Objection, your Honor, and I would like to be heard out of the hearing of the jury on this.

COURT: All right. Take the jury out."

Following a discussion in the absence of the jury, the unfinished question was abandoned. The jury returned to the jury box and defendant rested his case.

Defendant moved for a mistrial on the ground that the unfinished question quoted in the foregoing colloquy deprived him of a fair trial. Denial of the motion constitutes his thirteenth assignment of error.

This assignment has no merit. The unfinished question was no evidence against the defendant. Moreover, the allowance or refusal of a motion for a mistrial in a criminal case less than capital rests largely in the discretion of the trial court. *State v.*

*Hines,* 266 N.C. 1, 145 S.E. 2d 363 (1965) ; *State v. Humbles,* 241 N.C. 47, 84 S.E. 2d 264 (1954). The judge's action is not reviewable except under circumstances establishing gross abuse —a circumstance not shown by this record. *See State v. Guice,* 201 N.C. 761, 161 S.E. 533 (1931).

The action of the court in allowing the testimony of Lawrence A. Kelly as a "rebuttal" witness constitutes defendant's fourteenth assignment of error. Defendant argues that such evidence amounted to a reopening of the State's case and, further, that the evidence elicited was not in fact "rebuttal" testimony.

[8] The order of proof is a rule of practice resting in the sound discretion of the trial court. *State v. Thomas,* 244 N.C. 212, 93 S.E. 2d 63 (1956). "The court, to attain the ends of justice, may in its discretion allow the examination of witnesses at any stage of the trial." *State v. King,* 84 N.C. 737 (1881). The great weight of authority holds that "the admission in a criminal prosecution of evidence as a part of the rebuttal, when such evidence would have been properly admissible in chief, rests in the sound discretion of the trial judge and will not be interfered with in the absence of gross abuse of that discretion." 53 Am. Jur., Trial, § 129. *Accord, State v. Mack,* 282 N.C. 334, 193 S.E. 2d 71 (1972) ; *State v. Knight,* 282 N.C. 220, 192 S.E. 2d 283 (1972). This assignment is overruled.

Defendant's seventeenth assignment of error relates to the court's charge on first degree burglary.

[9] It appears that the court simply instructed the jury to disregard an inadvertent statement previously made and then proceeded to charge the jury correctly. The inadvertence was discovered immediately and the correction was prompt and complete. This is sufficient and is all the law requires. *State v. Orr,* 260 N.C. 177, 132 S.E. 2d 334 (1963) ; *Wyatt v. Coach Co.,* 229 N.C. 340, 49 S.E. 2d 650 (1948) ; *State v. Baldwin,* 178 N.C. 693, 100 S.E. 345 (1919). This assignment is overruled.

Defendant's eighteenth and nineteenth assignments relate to the instructions of the court on the law pertaining to felonious breaking or entering and non-felonious breaking or entering. Defendant contends the court erroneously defined, and failed to define, the essential elements of those offenses. These assignments are overruled for the reasons stated below.

[10] The court submitted as permissible verdicts: guilty of burglary in the first degree, guilty of felonious breaking or entering, guilty of non-felonious breaking or entering, or not guilty. All evidence offered by the State tended to show defendant was guilty of burglary in the first degree. All evidence offered by defendant tended to show defendant was not guilty and to support his alibi that he was home in bed at the time of the burglary charged in the bill of indictment. There was no evidence tending to show that defendant may be guilty of either felonious or non-felonious breaking or entering. "The necessity for instructing the jury as to an included crime of lesser degree than that charged arises when and only when there is evidence from which the jury could find that such included crime of lesser degree was committed. The *presence of such evidence* is the determinative factor." *State v. Hicks,* 241 N.C. 156, 84 S.E. 2d 545 (1954). *Accord, State v. Williams,* 275 N.C. 77, 165 S.E. 2d 481 (1969). Thus the court erred in submitting the lesser included offenses of felonious and non-felonious breaking or entering, but the error was definitely in defendant's favor and he is in no position to complain. *State v. Murry,* 277 N.C. 197, 176 S.E. 2d 738 (1970). The charge on these offenses, in view of the verdict, is immaterial.

[11] Assignments four and five relate to denial of motions for nonsuit and to set aside the verdict. Evidence offered by the State was sufficient to go to the jury and support its finding (1) that the latent print lifted from the flowerpot in the Davis home was in fact a print of defendant's right index finger; (2) that the latent print of defendant's right index finger was placed thereon by defendant on the occasion referred to in the indictment; and (3) that defendant was present when the crime charged in the indictment was committed and at least participated in its commission. *State v. Foster,* 282 N.C. 189, 192 S.E. 2d 320 (1972). These assignments are overruled.

On substantially similar evidence two juries have been satisfied beyond a reasonable doubt that defendant burglarized the Davis home as charged in the bill of indictment. In defendant's second trial now under review, we find no prejudicial error. The verdict and judgment must be upheld.

No error.

Chief Justice BOBBITT dissenting.

At 1 May 1972 Schedule "C" Regular Criminal Session, defendant was tried on two bills of indictment, one charging first degree burglary and the other charging assault with intent to commit rape. The assault indictment charged that, defendant on 5 September 1971 assaulted Rosa Mae Davis with intent to rape her. With reference thereto the jury returned a verdict of not guilty. Mrs. Davis's testimony affirmatively disclosed that she could not identify defendant as the intruder who was in her *bedroom*. With reference to the burglary indictment, defendant was found guilty of first degree burglary; and, in compliance with the jury's recommendation, the court pronounced judgment which imposed a sentence of life imprisonment. G.S. 14-52. Upon defendant's appeal, this Court awarded a new trial on account of the admission of incompetent prejudicial testimony. *State v. Foster*, 282 N.C. 189, 192 S.E. 2d 320 (1972).

At the 19 February 1973 Schedule "D" Conflict Criminal Session, defendant was tried again on the same burglary indictment and was again found guilty of first degree burglary and was again sentenced to life imprisonment. The present appeal is from that verdict and judgment.

The following is an excerpt from our opinion on former appeal:

"Motions filed by defendant assert the following: After his arrest on 22 October 1971, defendant was confined in jail until released on 19 January 1972. Nine warrants had been issued, two of which were for the crimes for which he was tried at the 1 May 1972 Session. Defendant was present and represented by counsel at each of five scheduled preliminary hearings. At each of the first four, the hearing was continued on motion of the State and over defendant's objection. The last was on 19 January 1972 when, by order of the presiding District Court Judge, all of the cases were dismissed from the docket of that court and in each case the entry 'nolle prosse' was made.

"We take judicial notice that the 3 January 1972 Session, at which the two indictments on which defendant was tried were returned, was a one-week session. A week or so after his release on 19 January 1972, defendant was rearrested on a capias based on these indictments. Seemingly, the District Court Judge who ordered defendant's release on 19 January 1972 was unaware of the fact that defendant had been indicted by the grand jury." 282 N.C. at 195, 192 S.E. 2d at 324-25.

By order dated 17 February 1972 Judge Hasty denied defendant's motion that the indictments be dismissed because he had been denied a preliminary hearing. This Court found no error in such denial of defendant's motions to dismiss. *State v. Foster*, 282 N.C. at 197, 192 S.E. 2d at 325.

Under the caption, "MOTIONS PRIOR TO TRIAL," the record now before us shows the following:

"MR. GILCHRIST: Your Honor, prior to proceeding in one of the cases, *State v. Willie Foster, Jr.*, #72-CR-1171, the State elects to take a nolle prosequi, in that a True Bill has never been returned by the Grand Jury, and, insofar as the State is able to ascertain, the witness cannot be served.

"COURT: Let it be Nolle Prosequied.

"MR. GILCHRIST: The State intends to call for trial Case 72-CR-1173.

"MR. HICKS: That is the only case you are going to call?

"MR. GILCHRIST: Yes.

"MR. HICKS: Your Honor, prior to beginning the trial, we would like to make certain Motions.

"The defendant thereupon moved to dismiss for failure to bring defendant to trial prior to today, February 20, 1973, notwithstanding numerous terms of Court having intervened, as demanded by his prior Motion For Speedy Trial or For Discharge Under G.S. 15-10, made in Open Court and filed January 19, 1972 as to all the remaining seven cases calendared for trial at this February 19, 1973 Session, asking that all seven cases be dismissed, including the case being called for retrial by the prosecution, #72-CR-1173 (formerly #71-CR-62833 in the District Court), namely the seven cases known as Case #72-CR-1172, formerly #71-CR-62838 in District Court, charging First Degree Burglary with intent to steal from James Edward Sinclair on or about October 11, 1971; Case #72-CR-1174, formerly #71-CR-62835 in District Court, charging Housebreaking and Larceny from Lonnie W. Wallace at 217 South Turner Avenue, Charlotte, N. C. on or about February 20, 1971; Case #72-CR-1175, formerly #71-CR-62834 in District Court, charging Housebreaking and Larceny from Kenneth Walker at 128 S. Gregg St., Charlotte, N. C. on or about May 8, 1971; Case #72-CR-1176, formerly #71-CR-62840 in District Court, charging

Housebreaking and Larceny from Teretha Phillips at 2224 Roslyn Avenue, Charlotte, N. C. on or about May 23, 1971; Case #72-CR-1177, formerly #71-CR-62837 in District Court charging Housebreaking in the home of Shirley T. Torrence at 514 Honeywood Ave., Apartment No. 3, Charlotte, N. C., on or about September 17, 1971; and Case #72-CR-1178, formerly #71-CR-62836 in District Court charging Housebreaking and Larceny from Roy Lee Armstrong at 201 South Turner Ave., Charlotte, N. C. on or about July 24, 1971; inasmuch as the prosecution had just nolle prosequied Case #72-CR-1171, formerly #71-CR-62839 in District Court charging first degree Burglary with intent to rape Martha Pitts on or about August 3, 1971; and the defendant previously had been found Not Guilty in his first trial of and Case #72-CR-1170, formerly #71-CR-62841 in District Court, charging assault with intent to rape Rosa Mae Davis on or about September 5, 1971, said Motion to Dismiss filed January 19, 1972 having been as follows. . . . "

Whether the cross-examination of defendant referred to below was prejudicial must be considered against the background of the indictments of defendant for offenses for which the State did not choose to place defendant on trial.

The State's entire case rested upon the fingerprint on the flowerpot. The original of the latent print lifted from the flowerpot was unavailable at the second trial. However, a photograph of this lost print had been made. I am in accord with the Court's holding that this photograph of the lost print is competent. However, the loss of the original does suggest that even the most careful officers and court personnel make mistakes.

No evidence points to the guilt of defendant except that relating to the fingerprint on the flowerpot. Defendant's testimony and evidence tending to show where he was and what he was doing at the time of the alleged burglary was not impeached or discredited in any manner apart from the presence of the fingerprint on the flowerpot. Evidence offered by defendant consisting of testimony of his good character and of his employment record was not discredited or impeached in any manner except by the fingerprint on the flowerpot.

The case was before the jury in this posture: The State's case consisted of testimony tending to show that the fingerprint

on the flowerpot was made by defendant at or about the time of the alleged burglary. Defendant's evidence consisted of testimony tending to show that he had never been in the Davis home; that he was an employed person of good character; and that he was at his home at the time of the alleged burglary. Seemingly, the State's counsel considered it a matter of major importance that doubt be cast upon defendant's character and the credibility of his testimony.

As the Court's opinion points out, the admission of the card dated 1958, bearing the name "Willie Foster, Jr.," was erroneous. There was no evidence as to when, by whom or under what circumstances this fingerprint was obtained. The 1958 card added nothing to the State's case except to call attention to the fact that a card bearing the fingerprint of defendant was in the master file at the police department. The only significant impact of this incompetent evidence was to give rise to the inference or suspicion that on some prior occasion defendant had made contact with the police department incident to some criminal charge. This, standing alone, probably would not be sufficiently prejudicial to justify the award of a new trial.

On cross-examination, the State's counsel was permitted, over objection by defendant, to ask defendant the following questions:

I

"Q. Now, I will ask you if on October 20, of 19, excuse me, on August 3, of 1971 if you didn't break into Martha W. Pitts' house . . .

"MR. HICKS: Objection.

"Q. At 2416 Rozzelles Ferry Road here in the city?

"MR. HICKS: Objection.

"A. No, I sure didn't."

This is the subject of Exception No. 23.

II

"Q. I will ask you if you didn't break in the residence of James Sinclair at 312 Center Street on October 11, 1971, by going into the front door and reaching up and unscrewing with your fingers a light bulb in the ceiling?

State v. Foster

"MR. HICKS: Objection.

"COURT: Overruled.

"Q. Did you or did you not?

"A. What you mean 'did I'? No, I didn't."

This is the subject of Exception No. 24.

### III

"Q. I will ask you if you didn't break into the residence of Lonnie Bell Wallace at 217 South Turner Street? How far is South Turner Street from there on Center Street?

"MR. HICKS: Objection.

"A. I couldn't tell you.

"Q. I will ask you if you didn't break into Lonnie Bell Wallace's house on February 20, 1971, between 6:30 and 11:00 o'clock and by breaking out the center glass window in the front door?

"MR. HICKS: Objection.

"COURT: Overruled.

"A. Sure didn't."

This is the subject of Exception No. 25.

### IV

"Q. I will ask you if you did not break into the residence of Teretha Phillips at 2224 Roslyn Avenue on the 23rd of May, 1971, by prying open her kitchen window and breaking out the window pane?

"MR. HICKS: Objection.

"COURT: Overruled.

"A. Sure didn't."

This is the subject of Exception No. 26.

### V

"Q. I will ask you if on the 17th of September, 1971, you didn't break into the home of Shirley Torrence at 514 Honeywood, Apartment No. 3, by taking the screen off the window and breaking out the front window?

State v. Foster

"MR. HICKS: Objection.

"COURT: Overruled.

"A. Sure didn't."

This is the subject of Exception No. 27.

VI

"Q. And I will ask you if you on the 25th day of July 1971 you didn't break into the residence of Roy Lee Armstrong at 201 South Turner Avenue?

"MR. HICKS: Objection.

"COURT: Overruled.

"A. Sure didn't."

This is the subject of Exception No. 28.

We note that the cross-examiner interrupted and revised his first question to correct an error in respect of the date on which the question suggests there was a breaking into the house of one Martha W. Pitts. The exact detail and particularity of each of these questions indicates that the cross-examiner had before him documents which alleged that defendant had committed such crimes. Indeed, it seems clear that these documents were the identical indictments referred to in the record under the heading, "MOTIONS PRIOR TO TRIAL," that is, indictments on which the State has not prosecuted defendant.

Although the record shows that defendant is under indictment for each of the six criminal offenses to which the cross-examiner's questions relate, there is no evidence that he committed any of them. The delay in prosecution notwithstanding defendant's repeated requests for preliminary hearings suggests that the State's evidence is insufficient to show that any of these alleged crimes was committed *by defendant*. The State elected to proceed only in a case which rested solely on a single fingerprint, presumably its strongest case.

Under the circumstances, the asking of these six questions by the State's counsel was highly prejudicial to defendant in that it tended to destroy by inference and suspicion the otherwise unimpeached evidence as to his alibi and as to his good character. The asking of these questions gave the impression that the State's counsel had knowledge of evidential facts suffi-

---

---

cient to support these insinuations. The record tends to negate rather than to support the view that he had such knowledge. If he did not have such knowledge, the cross-examination was improper. *State v. Phillips*, 240 N.C. 516, 82 S.E. 2d 762 (1954). If sufficient evidential facts do exist to support all or any of the six untried indictments, the State at long last may undertake to prosecute in such cases.

In *State v. Williams*, 279 N.C. 663, 672, 185 S.E. 2d 174, 180 (1971), this Court held "that, for *purposes of impeachment*, a witness, including the defendant in a criminal case, may *not* be cross-examined as to whether he has been *indicted* or is *under indictment* for a criminal offense other than that for which he is then on trial." Approval in this case of the six quoted questions would enable the cross-examiner to do indirectly what he could not do directly, that is, bring to the attention of the jury the fact that defendant was under indictment in other cases.

For the reasons indicated, I vote for a new trial.

Justice SHARP joins in this dissenting opinion.